**Affirmed in Part, Reversed and Remanded in Part, and Opinion filed January 4, 2017.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-15-00124-CV

---

### ROSEMARY TOOKER, Appellant

### V.

### ALIEF INDEPENDENT SCHOOL DISTRICT, Appellee

---

**On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2013-06192**

---

## O P I N I O N

This appeal arises out of employment-discrimination claims. An employee filed suit against her employer, an independent school district, asserting claims based on the employer's alleged violations of the Texas Commission on Human Rights Act, the Fair Labor Standards Act, the Family and Medical Leave Act, and the Texas Whistleblower Act. The trial court granted the employer's pleas to the jurisdiction and summary-judgment motions and dismissed all of the employee's

claims. We reverse the trial court's judgment as to a retaliation claim under the Fair Labor Standards Act and affirm the remainder of the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant/plaintiff Rosemary Tooker started working for appellee/defendant Alief Independent School District (the "District") in 1986. At all times material to Tooker's claims she was working for the District as an Energy Manager Assistant in the District's Maintenance Department. Tooker obtained a Class A Air Conditioning and Refrigeration Contractor License. Upon the retirement of the employee whose Class A Air Conditioning and Refrigeration Contractor License the District was using, Tooker offered the District the use of her Class A License. According to Tooker, in March 2011, the District offered to pay her $400 per month for the use of her License, even though the District had been paying the retired male employee $800 per month for the use of the same type of license. Tooker asserted that she lodged an internal complaint of gender discrimination with the District based on the District's refusal to pay her $800 per month for the use of the Class A License. Tooker alleged that after she made this complaint, the District began harassing her "on almost a daily basis." In July 2011, Tooker filed a charge alleging gender discrimination and retaliation (hereinafter the "First Charge"). She claimed the District retaliated against her because she had appealed the District's decision to offer her only $400 per month for the use of her License.

In April 2011, Tooker witnessed an incident that she believed may have been theft of the District's property by her supervisor and a coworker. Tooker alleges that she promptly reported the incident to the District's police department for investigation. Tooker claims that the police department took no action and that nearly two years later (in January 2013), she was told that the police department never received her incident report. The same month, Tooker met with

representatives from the District's human resources department and mentioned that the police department had not investigated the 2011 theft incident. According to Tooker, soon after that meeting the human resources department contacted the police department to begin the investigation. Tooker alleges that almost immediately thereafter several Department employees began making false allegations against Tooker in an effort to further harass her, force her to quit, and diminish the impact of her incident report and lawsuit that would soon follow. In January 2013, the District suspended Tooker with pay pending an investigation of allegations that Tooker had created a hostile work environment. Tooker filed a second charge of discrimination, alleging that the District was paying her less than males who perform the same or similar job duties and asserting continued retaliation and gender discrimination (hereinafter the "Second Charge").

Tooker also alleges that the District denied her compensatory time and refused to compensate her at time-and-a-half for all of her overtime hours.

At the end of January 2013, Tooker filed suit against the District, eventually asserting claims based on the District's alleged violations of the Texas Commission on Human Rights Act, Chapter 21 of the Texas Labor Code (the "Human Rights Act"), the Fair Labor Standards Act, title 29, chapter 8 of the United States Code (the "Fair Labor Act"), the Family and Medical Leave Act, title 29, chapter 28 of the United States Code (the "Leave Act"), and the Texas Whistleblower Act, chapter 554 of the Texas Government Code (the "Whistleblower Act"). *See* 29 U.S.C. § 201, *et seq*. (West, Westlaw through 2015 R.S.); 29 U.S.C. § 2611, *et seq*. (West, Westlaw through 2015 R.S.); Tex. Lab. Code Ann. § 21.001, *et seq*. (West, Westlaw through 2015 R.S.); Tex. Gov't Code Ann. § 554.001, *et seq*. (West, Westlaw through 2015 R.S.).

In May 2013, the District filed a plea to the jurisdiction, which the trial court

granted as to Tooker's Human Rights Act claims.[1]  The trial court later rendered a final judgment when it granted pleas to the jurisdiction and summary-judgment motions filed by the District on July 7, 2014 and on July 28, 2014.[2]  Tooker perfected appeal from the trial court's final judgment.

## II.  ISSUES AND ANALYSIS

### A. Did the trial court err in dismissing the gender-discrimination claim based on the stipend for the license?

Tooker asserted a gender-discrimination claim against the District alleging that the District offered to pay her $400 per month for the use of her License, even though the District had been paying a male employee $800 per month for the use of the same type of license.  The trial court granted the District's plea to the jurisdiction and dismissed this claim for lack of jurisdiction.  In her first argument on appeal Tooker asserts that the trial court erred in granting the District's plea as to this claim.

Sovereign immunity deprives a trial court of jurisdiction over lawsuits in which a party sues a school district unless the school district's sovereign immunity has been waived. *See Mission Consol. Indep. Sch. Dist v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012).  The Human Rights Act clearly and unambiguously waives immunity for suits brought against school districts under this statute.  *See* Tex. Lab. Code Ann.  §§ 21.002(4), 21.002(8)(D), 21.051, 21.254 (West, Westlaw through 2015 R.S.); *Garcia*, 372 S.W.3d at 636.  But, the Legislature has waived immunity only for those suits in which the plaintiff actually alleges a violation of the Human Rights Act by pleading facts that state a claim thereunder. *See* Tex.

---

[1] In August of 2014, while this suit was pending in the trial court, the District terminated Tooker's employment, but no claims by Tooker regarding this termination are part of this suit.

[2] The second document bears a "July 29, 2014" file stamp, but the trial court signed an order deeming this document to have been filed on July 28, 2014.

4

Lab. Code Ann. §§ 21.002(4), 21.002(8)(D), 21.051, 21.254; *Garcia*, 372 S.W.3d at 636–37.

For a plaintiff who proceeds under the *McDonnell Douglas* burden-shifting framework, the prima facie case is the necessary first step to bringing a discrimination claim under the Human Rights Act. *See Garcia*, 372 S.W.3d at 637. While such a plaintiff must sufficiently plead the prima facie case of her statutory claim, she will be required to submit evidence only if the defendant presents evidence negating one of those basic facts. *See id*. In this situation, failure to raise a fact issue on a challenged element of the prima facie case means that the trial court has no jurisdiction and the claim should be dismissed. *See id*.

In the absence of direct evidence of discrimination, the elements of Tooker's prima facie case of gender discrimination under the *McDonnell Douglas* framework are that Tooker (1) is a member of a protected class, (2) was qualified for her position, (3) was subject to an adverse employment decision, and (4) was treated less favorably than similarly situated persons not in the protected class. *See College of the Mainland v. Glover*, 436 S.W.3d 384, 393 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). In its first plea to the jurisdiction, the School District challenged the third and fourth elements. The trial court impliedly granted the plea to the jurisdiction on all bases asserted by the School District.

In filing a plea to the jurisdiction, the School District challenged the trial court's subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex. 2000). Because subject-matter jurisdiction is a question of law, we conduct a de novo review of the trial court's granting of the plea. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In its plea to the jurisdiction, the School District challenged the existence of jurisdictional facts; therefore, we consider relevant evidence submitted by the parties when necessary

5

to resolve the jurisdictional issues raised, as the trial court is required to do. *See id.* If the evidence creates a fact question regarding the jurisdictional issue, then the plea to the jurisdiction must be denied. *See id.* at 227–28. But, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

The District challenged the prima facie element that Tooker was treated less favorably than similarly situated males regarding payment of a stipend for use of a Class A Air Conditioning and Refrigeration Contractor License. *See College of the Mainland*, 436 S.W.3d at 393. The Supreme Court of Texas has concluded that "[e]mployees are similarly situated if their circumstances are comparable in all material respects." *Ysleta Indep. Sch. Dist. v. Monarrez,* 177 S.W.3d 915, 917 (Tex. 2005) (per curiam). The United States Court of Appeals for the Fifth Circuit has articulated a similar standard, saying that employees are similarly situated if their circumstances are "nearly identical." *See Perez v. Tex. Dep't of Criminal Justice, Institutional Div.,* 395 F.3d 206, 213 (5th Cir.2004).

The District submitted with its first plea to the jurisdiction affidavits of Jeff DeLisle and Charles Woods. DeLisle, the Director of the District's Maintenance and Operations Department, testified that he supervised Tooker and all of the District's Maintenance Department employees.[3] According to DeLisle, in March 2011, John Proffitt retired. Proffitt had been working as the HVAC Foreman. During the 2010-2011 school year, Proffitt received an $800 per month stipend for the "Use of License." Proffitt held three licenses that accounted for the total amount of the stipend: (1) a "Class A Air Conditioning and Refrigeration Contractor License," (2) an "EPA 608 Certification-Universal License," and (3) a

---

[3] This paragraph and the following four paragraphs describe relevant portions of DeLisle's testimony.

6

"3rd Grade Stationary Engineer License" (hereinafter "Boiler Operator License").

DeLisle determined that no other employee in the HVAC Department held all three licenses that Proffitt held. One employee had the EPA certification, and another employee had the Boiler Operator License, and each employee was willing to dedicate his license or certification for the District's use. DeLisle testified that he and Wilton Curry, the Maintenance Department Supervisor, determined what they believed to be a fair value for each of the three licenses and divided the $800 per month stipend that Proffitt had been receiving for the use of the three licenses according to the values they established, which were $400 per month for the Class A License, $200 per month for the EPA license, and $200 per month for the Boiler Operator License. Stanley Kuykendall, a male employee, began receiving a $200 per month stipend for the use of his EPA license, and Robert Pritchard, another male employee, began receiving a $200 per month stipend for the use of his Boiler Operator License. Curry and DeLisle agreed that the Class A License should have a higher value than the other two licenses because it is more difficult to obtain and permits the licensee to perform a wide variety of services on HVAC systems.

The District offered Tooker a $400 per month stipend for the use of her License, which is a Class A Air Conditioning and Refrigeration Contractor License. Tooker refused to accept the $400 per month stipend and instead demanded the full $800 per month stipend that Proffitt had received in consideration of the use of all three of his licenses. DeLisle testified that the District could not have offered Tooker the $800 per month stipend that Proffitt formerly received because she did not hold the same licenses and she was not qualified to perform the full range of duties assigned to Proffitt while Proffitt served as the HVAC Forman. According to DeLisle, Tooker's job duties as the Energy Manager Assistant differed from Proffitt's duties as the HVAC Foreman.

As the Energy Manager Assistant, Tooker operated mostly in a clerical role. Her job goal was to assist in the coordination of energy management programs for the District's campuses. Tooker received requests for maintenance to the District's air conditioning systems and input those requests into an automatic scheduler. Tooker also received phone calls regarding the hot or cold conditions at the District's campuses and remotely verified those conditions using the energy management system. Tooker also could dispatch technicians to investigate any suspected issues with the District's HVAC systems. Tooker's job description did not require her to travel to the District's campuses to troubleshoot any HVAC equipment or to make any repairs to HVAC equipment.

Proffitt supervised all of the District's HVAC technicians, and ultimately was responsible for troubleshooting, repairing, maintaining, and installing HVAC equipment. Proffitt also was responsible for disciplining HVAC staff, conducting employee trainings, and for other human resources functions related to HVAC staff, such as granting leave and reviewing time cards and work orders. Proffitt also was charged with completing material and parts requisitions and with receiving bids on goods and services from outside contractors.

Charles Woods, the Deputy Superintendent of Business Services for the District, testified that in the spring of 2011, DeLisle and Curry informed Woods that they had denied Tooker's request for an $800 per month stipend for the District's use of Tooker's HVAC license.[4] According to Woods, DeLisle informed Woods that Tooker demanded that amount based on her mistaken belief that Proffitt received an $800 per month stipend for the use of his HVAC license. Woods stated that Proffitt actually received the $800 per month stipend because he

---

[4] This paragraph describes relevant portions of Woods's testimony.

8

held three licenses, two of which Tooker did not possess. Woods affirmed the decision to offer Tooker a $400 per month stipend.

The evidence attached to the District's first plea to the jurisdiction negated the prima facie element that Tooker was treated less favorably than similarly situated males regarding payment of a stipend for use of a Class A Air Conditioning and Refrigeration Contractor License. *See College of the Mainland*, 436 S.W.3d at 393–95. Therefore, to avoid dismissal Tooker had to submit evidence raising a fact issue as to this essential element. *See Garcia*, 372 S.W.3d at 637. The only evidence that Tooker filed in response to the first jurisdictional plea was a copy of the Second Charge. That charge does not raise a fact issue as to whether Tooker was treated less favorably than similarly situated males regarding payment of a stipend for use of a Class A Air Conditioning and Refrigeration Contractor License. *See id.*

On appeal, Tooker suggests that Proffitt received the $800 per month stipend solely for the use of Proffitt's Class A Air Conditioning and Refrigeration Contractor License. Tooker also asserts that DeLisle misrepresented the facts in his affidavit attached to the first jurisdictional plea. According to Tooker, Proffitt did not obtain an $800 per month stipend based on his having three licenses, and Proffitt was receiving an $800 per month stipend before he obtained the EPA license and the Boiler Operator License. Tooker also makes other assertions. The primary evidence upon which Tooker relies as allegedly raising a fact issue is Tooker's declaration that was attached to her "Motion to Reconsider Granting Defendant's Plea to the Jurisdiction." But, the trial court denied this motion as to Tooker's claims under the Human Rights Act in an order in which the court did not say that the court had considered the evidence attached to Tooker's motion to reconsider. Tooker does not argue that the evidence in this declaration was newly

9

discovered and could not have been discovered through due diligence before the trial court granted the first jurisdictional plea. Though Tooker attached the declaration to her motion to reconsider, the record does not show that the trial court considered this declaration in granting the first jurisdictional plea and dismissing Tooker's claims under the Human Rights Act, nor does the record show that the trial court exercised its discretion to consider the untimely declaration as potentially raising a fact issue in connection with ruling on Tooker's motion to reconsider. In this context, we cannot consider the declaration as potentially raising a fact issue as to the grounds raised in the District's first jurisdictional plea. *See Guishard v. Money Mgmt. Intern., Inc.*, No. 14-14-000362-CV, 2015 WL 4984853, at \*2 (Tex. App.—Houston [14th Dist.] Aug. 20, 2015, no pet.) (mem. op.); *Smith v. City of League City*, 338 S.W.3d 114, 123 n.6 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *McMahan v. Greenwood*, 108 S.W.3d 467, 499–500 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

In response to the District's first jurisdictional plea Tooker did not timely submit evidence raising a fact issue as to whether Tooker was treated less favorably than similarly situated males regarding payment of a stipend for use of a Class A Air Conditioning and Refrigeration Contractor License. *See Garcia*, 372 S.W.3d at 637. Tooker has not shown that an exception applies under which this court can consider the declaration attached to her motion to reconsider in determining whether the evidence raised a fact issue on this point. *See Guishard*, 2015 WL 4984853, at \*2; *Smith*, 338 S.W.3d at 123 n.6; *McMahan*, 108 S.W.3d at 499–500. We conclude that the trial court did not err in granting District's first plea to the jurisdiction as to Tooker's gender-discrimination claim regarding compensation for Tooker's License.[5] *See College of the Mainland*, 436 S.W.3d at

---

[5] Tooker asserts that if we find the allegations in her pleading defective, we should reverse and

393–95.

**B. Has appellant sufficiently briefed a challenge to the trial court's dismissal of her retaliation claim based on the District's 2011 conduct?**

In two paragraphs in her appellate brief, Tooker states that the trial court had jurisdiction over her retaliation claim under the Human Rights Act based on the District's conduct in 2011. Tooker asserts that the District substantially reduced or changed her job duties after her 2011 gender-discrimination complaint. Though Tooker cites three documents (two of which were not before the trial court when it granted the District's first jurisdictional plea), she does not cite any legal authorities, nor does she discuss the grounds the District asserted in the first jurisdictional plea against this claim. Tooker has not provided any analysis or legal citations showing how the trial court erred in granting the District's first plea to the jurisdiction as to this claim. Even liberally interpreting Tooker's appellate briefing, we cannot conclude that she has adequately briefed this issue. *See* Tex. R. App. P. 38.1(i); *Kaldis v. Aurora Loan Servs*., 424 S.W.3d 729, 736–37 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Therefore, Tooker has waived any challenge to the trial court's granting of the District's first jurisdictional plea as to the retaliation claim based on the District's conduct in 2011. *See Kaldis*, 424 S.W.3d at 736–37.

**C. Has appellant sufficiently briefed a challenge to the trial court's dismissal of her retaliation claims based on other conduct?**

In her appellate brief, Tooker states in a conclusory manner that she provided sufficient facts in her petitions to support a prima facie case of retaliation

_____

remand to allow her a reasonable opportunity to cure the pleading defects. Our analysis in this section is not based on any pleading defects, so Tooker's request for an opportunity to cure pleading defects does not apply.

claim under the Human Rights Act. As to any such claim based on conduct other than the alleged 2011 retaliation conduct that was the basis of the First Charge, the trial court dismissed these claims based on the District's "Objections and Motion to Strike Plaintiff's Changes to her Deposition Testimony, Plea to the Jurisdiction, Traditional, and No Evidence Motions for Summary Judgment" (hereinafter the "Second Motion"). Tooker does not address the grounds in the Second Motion on which the trial court dismissed these claims. Tooker does not provide any analysis or legal citations showing how the trial court erred in granting the Second Motion as to these claims. Even liberally interpreting Tooker's appellate briefing, we cannot conclude that she has adequately briefed this issue. *See* Tex. R. App. P. 38.1(i); *Kaldis*, 424 S.W.3d at 736–37. Therefore, Tooker has waived any challenge to the trial court's granting of the Second Motion as to these claims. *See Kaldis*, 424 S.W.3d at 736–37.

## D. Has appellant sufficiently briefed a challenge to the trial court's dismissal of her hostile-work-environment claims on the ground that she failed to exhaust administrative remedies?

In its first jurisdictional plea, the District asserted that Tooker had not exhausted administrative remedies as to her hostile-work-environment claim. The trial court granted the plea on this ground and dismissed this claim. On appeal, Tooker has not challenged this dismissal. In fact, in her appellate brief, Tooker notes that although she argued in the trial court that the trial court had jurisdiction over her hostile-work-environment claim based on the First Charge, she does not make this argument on appeal or challenge the trial court's dismissal of her hostile-work-environment claim based on the First Charge.

Tooker amended her petition and apparently sought to plead another hostile-work-environment claim on the premise that she had exhausted administrative

remedies by means of the Second Charge. In the Second Motion, the District asserted, among other things, the following:

(1) Tooker had not exhausted her administrative remedies as to her hostile-work-environment claim because neither the First Charge nor the Second Charge were sufficient to exhaust remedies as to this claim;

(2) Tooker's hostile-work-environment claim is time barred; and

(3) Tooker has not pleaded and cannot prove that any alleged harassment under her hostile-work-environment claim affected a term, condition, or privilege of Tooker's employment because the alleged conduct falls short of the severe or pervasive conduct necessary to establish such a claim.

Tooker argues in one section of her appellate brief that the evidence raised a fact issue as to each of the essential elements of her hostile-work-environment claim.[6] Exhaustion of administrative remedies is not one of these elements. Tooker also appears to argue in another section of her brief that her hostile-work-environment claim is not time-barred. Tooker, however, has not adequately briefed the issue of whether she exhausted her administrative remedies as to her hostile-work-environment claim based on the Second Charge. Though Tooker

---

[6] In her appellate briefing, Tooker conflates her allegations of actionable retaliation against her for engaging in a protected activity with a hostile-work-environment claim based on alleged harassment due to a protected status. Tooker asserts that evidence of retaliation raises a fact issue as to her hostile-work-environment claim. But, retaliation is not the same as discrimination or a hostile work environment. *See University of Tex. M.D. Anderson Cancer Center v. Eltonsy*, 451 S.W.3d 478, 484–85 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (distinguishing conduct in which an employer retaliates against an employee for engaging in a protected activity from conduct by the employer constituting gender discrimination); *Fort Bend Indep. Sch. Dist. v. Williams*, No. 01-13-00052-CV, 2013 WL 4779693, at *8–10 (Tex. App.—Houston [1st Dist.] Sept. 5, 2013, no pet.) (distinguishing conduct in which an employer retaliates against an employee for engaging in a protected activity from conduct creating a hostile work environment based on harassment regarding the employee's protected status and concluding that charge of discrimination and the amendment alleging retaliation did not exhaust administrative remedies as to the hostile-work-environment claim, even though the charge mentioned a "hostile working environment") (mem. op.).

does not assert in her opening brief that she exhausted administrative remedies as to her hostile-work-environment claim based on the Second Charge, in the section discussing the timeliness of this claim, Tooker cites the legal standard for exhausting administrative remedies, and states that the facts set forth in the First Charge and in the Second Charge amounted to allegations of a hostile work environment. Tooker also twice states in a conclusory manner that the trial court had jurisdiction over her hostile-work-environment claim based on the Second Charge. In a footnote, Tooker states that she does not concede that her hostile-work-environment claim based on the Second Charge "was not well-pled for the Second and Third Amended Petitions."

Though Tooker cites two cases on the general legal standard for exhausting administrative remedies in a charge of discrimination, she does not cite any legal authorities regarding exhaustion of administrative remedies as to a hostile-work-environment claim. More importantly, Tooker does not analyze the language of the First Charge or the Second Charge, nor does she apply any legal standard to this language in an attempt to show that she exhausted administrative remedies as to her hostile-work-environment claim. Tooker has not provided an analysis in which she purports to show that the trial court erred in granting the Second Motion based on the District's argument that Tooker had not exhausted administrative remedies as to her hostile-work-environment claim. Even under a liberal interpretation of Tooker's appellate briefing, we cannot conclude that she has adequately briefed this issue. *See* Tex. R. App. P. 38.1(i); *Kaldis*, 424 S.W.3d at 736–37. Therefore, Tooker has waived any challenge to the trial court's granting of the Second Motion as to her hostile-work-environment claim.[7] *See Kaldis*, 424

---

[7] Even if Tooker had adequately briefed this issue, we would conclude that Tooker had not exhausted administrative remedies as to her hostile-work-environment claim. *See Williams*, 2013 WL 4779693, at *8–10.

14

S.W.3d at 736–37.

**E. Has appellant shown that she raised a fact issue as to whether the District treated her less favorably than similarly situated male employees regarding compensation?**

On appeal, Tooker asserts that the evidence raised a fact issue as to each element of her prima facie case on her disparate-compensation claim, in which she alleges that her salary was lower than similarly situated male employees. Under the *McDonnell Douglas* framework, one element of this claim is that the District treated Tooker less favorably as to salary than similarly situated male employees. *See College of the Mainland*, 436 S.W.3d at 393. The Supreme Court of Texas has concluded that "[e]mployees are similarly situated if their circumstances are comparable in all material respects." *Ysleta Indep. Sch. Dist.,* 177 S.W.3d at 917. The United States Court of Appeals for the Fifth Circuit has articulated a similar standard, saying that employees are similarly situated if their circumstances are "nearly identical." *See Perez*, 395 F.3d at 213. The District submitted with its Second Motion evidence that negated this element of Tooker's prima facie case and showed that Tooker was not similarly situated to the male comparators identified by Tooker in the trial court. *See College of the Mainland*, 436 S.W.3d at 393–95. Therefore, to avoid dismissal, Tooker had to submit evidence raising a fact issue as to this essential element. *See Garcia*, 372 S.W.3d at 637.

On appeal, Tooker points to evidence that Proffitt was in the same pay grade when he retired in 2011 as Tooker was in 1993.[8] We presume for the sake of argument that this statement is correct. Tooker then asserts that she performed the job duties of a foreman and suggests that she should have received the same salary

---

[8] We presume that Tooker has sufficiently briefed her challenge to the dismissal of her disparate-compensation claim.

15

as Proffitt, the only male comparator Tooker identifies on appeal. But, the evidence Tooker cites does not raise a fact issue as to whether she performed the same job duties as Proffitt. Tooker has not shown that she and Proffitt (or any other male comparator) were similarly situated. *See College of the Mainland*, 436 S.W.3d at 393–95. Therefore, Tooker has not shown that the trial court erred in granting the Second Motion as to her disparate-compensation claim and dismissing this claim. *See College of the Mainland*, 436 S.W.3d at 393–95; *Garcia*, 372 S.W.3d at 637.

**F. Has appellant challenged all the grounds upon which the trial court dismissed appellant's Whistleblower Act claim?**

Tooker asserts that the District violated the Whistleblower Act by suspending her with pay in 2013. The District sought dismissal of Tooker's Whistleblower Act claim in its "Plea to the Jurisdiction, Traditional, and No Evidence Motions for Summary Judgment," deemed by the trial court to have been filed on July 28, 2014 (hereinafter the "Third Motion"). In the Third Motion, the District asserted the following grounds:

(1) Tooker never filed a grievance under the District's grievance procedures regarding her Whistleblower Act claim.

(2) Tooker cannot establish a causal connection between her email to Captain Bonaparte in April 2011 and her administrative leave with pay in January 2013.

(3) Tooker did not report an alleged violation of law to an appropriate authority.

(4) The District would have taken the same action against Tooker even if she had not made the alleged report of a violation of law.

(5) There is no evidence that Tooker suffered an adverse personnel action when she was placed on administrative leave with pay.

(6) There is no evidence that Tooker made a report of a violation of law in good faith.

(7) There is no evidence that, but for making the report to the District

16

Police Department in April 2011, Tooker would not have been placed on administrative leave with pay in January 2013.

When, as in this case, the trial court does not specify the grounds upon which the trial court relied, we must affirm the trial court's ruling if any of the independent grounds is meritorious. *See FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000). In this circumstance, the appealing party must challenge all possible grounds on which the motion could have been granted, properly or improperly. *See FinServ Cas. Corp. v. Transamerica Life Ins. Co.*, No. 14-14-0838-CV, —S.W.3d—, —, 2016 WL 6134442, at *6 (Tex. App.—Houston [14th Dist.] Oct. 20, 2016, no pet. h.). Even construing Tooker's appellate brief liberally, we cannot conclude that she has briefed arguments challenging each of the independent grounds on which the trial court granted the Third Motion as to Tooker's Whistleblower Act claim. *See Navarro v. Grant Thornton, LLP,* 316 S.W.3d 715, 719–20 (Tex. App.—Houston [14th Dist.] 2010, no pet.). As to the no-evidence summary-judgment ground that there is no evidence that Tooker suffered an adverse personnel action when she was placed on administrative leave with pay, Tooker's opening brief, at most, addresses this ground in a single paragraph containing conclusory statements and no citations to the record or to legal authority. The briefing is inadequate to constitute a challenge to the trial court's ruling on this ground. Because Tooker has not briefed arguments challenging each of the independent grounds on which the trial court granted the Third Motion as to Tooker's Whistleblower Act claim, we overrule Tooker's challenge to the trial court's dismissal of her Whistleblower Act claim. *See id*.

**G. Has appellant shown that the trial court erred in granting the Third Motion as to appellant's Leave Act claim?**

The Leave Act allows eligible employees working for covered employers to take temporary leave without the risk of losing employment because of

17

(1) a serious health condition that makes the employee unable to perform the functions of the employee's position,

(2) the birth or adoption of a child,

(3) the placement of a child with the employee for foster care,

(4) the care of a spouse, child, or parent who has a serious health condition, or

(5) any qualifying exigency (as determined by regulation) arising out of the fact that the spouse, or a son, daughter, or parent of the employee is on covered active duty (or has been notified of an impending call or order to covered active duty) in the Armed Forces.

(collectively the "Statutory Reasons"). *See* 29 U.S.C. § 2612 (West, Westlaw through 2015 R.S.); *Hunt v. Rapides Healthcare Sys.*, 277 F.3d 757, 762–63 (5th Cir. 2001), *abrogated on other grounds by*, *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 61–67, 126 S.Ct. 2405, 2411–14, 165 L.Ed.2d 345 (2006). The statute provides a series of substantive rights. *See Hunt*, 277 F.3d 757, 763. The Leave Act requires a covered employer to allow an eligible employee up to a specified amount of unpaid leave in a twelve-month period for one or more of the Statutory Reasons. *See* 29 U.S.C. § 2612; *Hunt*, 277 F.3d at 763. Subject to certain provisions of the Leave Act, leave based on the employee's serious health condition or to care for a spouse, child, or parent who has a serious health condition may be taken intermittently or on a reduced leave schedule when medically necessary. *See* 29 U.S.C. § 2612(b). When an eligible employee returns from leave taken under the Leave Act, the employer must restore the employee to the same position or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. *See* 29 U.S.C. § 2614(a)(1) (West, Westlaw through 2015 R.S.); *Hunt*, 277 F.3d at 763. The Leave Act makes it "unlawful for any employer to interfere with, restrain, or deny the

exercise of or the attempt to exercise, any right provided under this subchapter."[9] *See* 29 U.S.C. § 2615(a)(1) (West, Westlaw through 2015 R.S.); *Hunt*, 277 F.3d at 763. An employer who engages in such unlawful conduct is liable to any eligible employee for certain losses incurred by such employee as a result of the unlawful conduct. *See* 29 U.S.C. § 2617(a)(1)(A)(i).

Tooker asserted a damage claim against the District under title 29, section 2617 of the United States Code. *See id*. In the Third Motion, the District sought a no-evidence summary judgment as to this claim on the ground that there was no evidence of the essential element that the District denied Tooker Leave Act benefits to which she was entitled. Tooker agrees that this is an essential element of her claim. *See Brackens v. Dallas Indep. Sch. Dist.*, No. 3:09-CV-0642-D, 2010 WL 5464823, at *21 (N.D. Tex. Sept. 20, 2010) (listing denial of Leave Act benefits to which the employee was entitled as one of the essential elements of this claim). The only evidence Tooker cites as raising a fact issue on this element is the following paragraph from an affidavit of Tooker:

> I requested FMLA[10] leave in March 2014. I submitted all documentation and medical forms but my FMLA [sic] was never approved. In 2012 and 2013, I told DeLisle that my son was very ill. He never suggested FMLA leave. I had to use vacation or sick days. Some of these days were ultimately counted against me and affect my attendance record. I have been under the doctor care [sic] for years and would have benefitted from intermittent FMLA leave. I did not know this would qualify for FMLA until my attorney told me about it. She requested it as well on my behalf in March 2014 but did not hear

---

[9] The Leave Act also makes it unlawful for any employer to discharge or in any other manner discriminate against any individual for engaging in certain protected activities. *See* 29 U.S.C. § 2615(a)(2) & (b). Both in the trial court and on appeal, Tooker has stated that she is not asserting a Leave Act claim based on these provisions at this time.

[10] Although the term "FMLA" is not defined or explained in the affidavit, "FMLA" is an acronym often used to refer to the Leave Act.

back from [the District's] attorney[]s until July 2014. To date, I still have not received an answer regarding FMLA. Since I have been suspended and notified of my termination, it really is too late.

In reviewing a no-evidence summary judgment, we ascertain whether the nonmovant pointed out summary-judgment evidence raising a genuine issue of fact as to the essential elements attacked in the no-evidence motion. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206–08 (Tex. 2002). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

The above-quoted paragraph does not raise a raise a genuine fact issue as to whether the District denied Tooker Leave Act benefits to which she was entitled.[11] *See Brackens*, 2010 WL 5464823, at *21. Tooker has not shown that the summary-judgment evidence raised a genuine fact question on this issue. *See id*. Because Tooker has not shown that the trial court erred in granting the Third Motion as to Tooker's Leave Act claim, we overrule Tooker's challenge to the trial court's dismissal of this claim.

**H. Has appellant shown that the trial court erred in dismissing her overtime-compensation claim under the Fair Labor Act?**

Tooker asserted a claim against the District under the Fair Labor Act for

---

[11] In her briefing Tooker seems to suggest that the District does not dispute any of the essential elements of her Leave Act claim. The District disputes whether the District denied Tooker Leave Act benefits to which she was entitled.

20

unpaid overtime compensation. *See* 29 U.S.C. § 216(b) (West, Westlaw through 2015 R.S.) (providing statutory damage claim for unpaid overtime compensation against employer who fails to provide overtime compensation as required by section 207 of the Fair Labor Act).

The Fair Labor Act mandates that "[e]xcept as otherwise provided in [section 207], no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1) (West, Westlaw through 2015 R.S.).

As a public employee, Tooker could receive compensatory time off in lieu of overtime pay at a rate of at least one-and-a-half hours for each hour of employment for which overtime compensation is required. *See* 29 U.S.C. § 207(o). The employer and employee must agree on the compensatory-time-off arrangement before overtime work is performed. *See id*.

The evidence before the trial court established that Tooker and the District agreed Tooker would earn one-and-a-half hours of compensatory time for each hour of work in excess of forty hours per week. Until 2013, when the District ended the practice of having maintenance-department employees "on-call" during non-business hours, the Maintenance Department policy allowed department employees, including Tooker, to earn compensatory time for being "on-call," even if the employee did not receive any calls and did not work any hours while "on call."

An employer who knows that an employee is working overtime cannot stand by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation.

21

*Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005). If the employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer does not violate section 207 of the Fair Labor Act by failing to provide compensation for the overtime hours. *Id*. An employee bringing a claim for unpaid overtime compensation under the Fair Labor Act first must demonstrate she has performed work for which she was compensated improperly, and the employee must produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. *Id*.

On appeal, Tooker asserts that the evidence raised a fact issue as to whether the District denied her overtime benefits from 2010 to 2012 and that the trial court erred in dismissing her overtime-compensation claim under the Fair Labor Act. Tooker asserts that two paragraphs in one of her affidavits and a two-page document that she created raise a genuine fact issue as to this claim. In one paragraph in the affidavit Tooker states she was supposed to stop working at 4:30 p.m. Tooker then says that "[e]very day that I worked, I was required to lock up and take calls regarding HVAC problems until I was instructed not to work overtime or stay pas[t] 4:40 p.m." In a sheet Tooker prepared, she lists "Earned Comp Time" for various dates in 2010, 2011, and 2012. Though it is not clear, it appears that Tooker calculates that she worked 42.5 weeks in each of these years and that each day she worked 21 extra minutes. This unsubstantiated and speculative estimate of uncompensated overtime does not raise a genuine fact issue to preclude summary judgment as to Tooker's overtime-compensation claim under the Fair Labor Act. *See Ihegword v. Harris Cnty. Hosp. Dist.*, 929 F.Supp.2d 635, 668 Mar. 7, 2013), *aff'd,* 555 Fed. Appx. 372 (5th Cir. 2014).

In the other cited paragraph in her affidavit, Tooker states that she prepared

22

a document showing her calculations of compensatory time. She says she made these calculations based on documents the District produced in this lawsuit and that these documents "only show comp-time as straight time." In her affidavit, Tooker does not identify the documents to which she refers.[12] In any event, beyond the calculation of the 21 minutes extra per day discussed above, in her calculation document Tooker simply lists dates along with a corresponding number of compensatory hours earned, totals the hours, and adds 50% of the total to achieve time-and-a-half. In her calculations, Tooker does not reflect whether she timely submitted a form to the District claiming to have earned any of these hours of compensatory time. Nor does Tooker state how many hours of compensatory time the District gave her for the items listed in these calculations. Significantly, under the District's policies during 2010-2012, Tooker could earn compensatory hours for reasons other than working more than forty hours in a week. For example, Tooker could have earned compensatory hours for being "on call." Listing numbers of compensatory hours Tooker claims she earned is not the same as saying that she worked more than forty hours during any week because she might have earned the hours by being "on call." Nowhere in her calculation document does Tooker state or clearly indicate that she worked more than forty hours in a week. Tooker's conclusory, unsubstantiated, and speculative calculation document does not raise a genuine fact issue to preclude summary judgment as to Tooker's overtime-compensation claim under the Fair Labor Act. *See Ihegword*, 929 F.Supp.2d at 668.

In her affidavit, Tooker states, "[f]or instance, I worked 4 hours of overtime on January 14, 2010, as reflected in [the calculation document]. I should have received 6 hours of comp-time but [the District] only gave me 4 hours straight

---

[12] In her appellate brief, Tooker says that the documents are attached to the Second Motion as Exhibit C-5.

time." Evidence from the District shows that on that date Tooker earned 4 hours of compensatory time for being "on call," not for working more than forty hours in a week. Presuming that Tooker's statements in the affidavit raise a genuine fact issue as to whether she worked more than forty hours that week, the evidence also contained a document Tooker signed, showing that she was aware that "[a]ll time worked will be reflected on [the] time card" and that compensatory-time-earned sheets must be turned in to the Foreman and the Secretary by noon on Tuesday of the week after the compensatory time was earned. Employees asserting claims under the Fair Labor Act are bound by such policies. *See Nieddu v. Lifetime Fitness, Inc.*, 977 F.Supp.2d 686, 698–99 (S.D. Tex. 2013). Tooker did not submit evidence showing that her time cards reflected that she worked more than forty hours in a week and that she did not receive one-and-a-half compensatory hours for every hour worked in excess of forty during that week. Nor did Tooker submit any evidence showing that the District did not give her credit for the proper amount of compensatory time earned, even though Tooker submitted a form to obtain compensatory time based on having worked more than forty hours in a week.

The evidence Tooker cites does not raise a raise a genuine fact issue as to her overtime-compensation claim under the Fair Labor Act. *See Harvill*, 433 F.3d at 441; *Ihegword*, 929 F.Supp.2d at 668. We overrule Tooker's challenge to the trial court's dismissal of this claim.

## I. Did the trial court err in dismissing appellant's retaliation claim under the Fair Labor Act?

The Fair Labor Act makes it unlawful for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3) (West, Westlaw through 2015 R.S.).

A retaliation claim under the Fair Labor Act is subject to the *McDonnell Douglas* analytical framework. *See Kanida v. Gulf Coast Med. Pers., LP*, 363 F.3d 568, 577 (5th Cir. 2004). For a Fair Labor Act retaliation claim the plaintiff must make a prima facie showing of (1) participation in protected activity under the Fair Labor Act, (2) an adverse employment action, and (3) a causal link between the activity and the adverse action.[13] *See Hagan v. Echostar Satellite, LLC*, 529 F.3d 617, 624 (5th Cir. 2008).

The trial court dismissed Tooker's Fair Labor Act retaliation claim based on the District's grounds that there is no evidence of any of the three elements of the prima facie case.[14] On appeal, Tooker asserts that the evidence raises a fact issue as to each element.

Tooker filed the original petition in the trial court, asserting a claim against the District for violation of the Fair Labor Act and alleging that the District failed to compensate her for all of the overtime she had worked. This action constitutes participation in protected activity under the Fair Labor Act. *See* 29 U.S.C. § 215(a)(3); *Hagan*, 529 F.3d at 624.

For purposes of a Fair Labor Act retaliation claim, an adverse employment action must include conduct that "a reasonable employee would have found . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from [participating in the protected activity]."

---

[13] To succeed in a Fair Labor Act retaliation claim, a plaintiff need not show that she had a meritorious Fair Labor Act compensation claim; therefore, Tooker's failure to show that the trial court erred in dismissing her Fair Labor Act compensation claim does not affect this court's analysis of her Fair Labor Act retaliation claim. *See Little v. Technical Specialty Prods., LLC,* 940 F.Supp.2d 460, 478 (E.D. Tex. 2013).

[14] The trial court also impliedly dismissed the Federal Labor Act retaliation claim to the extent Tooker relied on a termination of her employment as the adverse employment action, based on a traditional ground in the Second Motion. Tooker has not challenged this ruling on appeal.

25

*Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006); *Cantu-Thacker v. River Oaks, Inc.*, No. H-08-2109, 2009 WL 1883967, at *4 (S.D. Tex. June 30, 2009).  The significance of any given act of retaliation often will depend upon the particular circumstances.  *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 69; *Cantu-Thacker*, 2009 WL 1883967, at *4.  It is important to separate "significant from trivial harms."  *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68; *Cantu-Thacker*, 2009 WL 1883967, at *4.

Tooker asserts that the District engaged in an adverse employment action when Jeff DeLisle gave her a memorandum on February 22, 2013, less than a month after she filed this lawsuit.  In this memorandum, DeLisle stated as follows:

> In addition to your issues above it has come to my attention that you have alleged that you have not been properly compensated for overtime work. You are hereby directed not to work any overtime unless specifically asked to do so by either Wilton Curry or me.

> Failure to follow these directives will be viewed as insubordination and/or misconduct; therefore, resulting in disciplinary action up to and including a recommendation for termination.

Evidence before the trial court showed a District policy requiring all nonexempt employees to have the approval of their supervisor before working overtime. Thus, before the lawsuit, Tooker was permitted to seek approval to work overtime. DeLisle's memorandum changed that.  Tooker was not to work overtime unless the named individuals asked her to do so, and DeLisle threatened Tooker with a potential recommendation for termination if she failed to comply with this directive. The evidence raises a fact issue as to (1) whether under the new restriction, Tooker could not initiate an overtime possibility as other employees were permitted to do under the District's policy; and (2) whether the new restriction effectively eliminated Tooker's overtime hours unless she received a specific request.  Because the potential need for overtime work is sometimes only

26

within the employee's knowledge, an employee who is barred from seeking prior approval for overtime might effectively lose that overtime and so might be dissuaded from pursuing the protected activity.

The evidence raises a genuine fact issue as to whether, when DeLisle gave Tooker the overtime-restriction memorandum and had her sign it, Tooker had worked and been compensated for overtime in the past under a policy requiring only prior supervisor approval. In the memorandum, DeLisle noted Tooker's overtime-compensation claim and then directed Tooker not to work any overtime unless specifically asked to do so by either Wilton Curry or DeLisle. The evidence raises a genuine fact issue as to whether a reasonable employee, who had worked overtime in the past and been compensated for it, would have found DeLisle's memorandum to be materially adverse conduct due to DeLisle's change in policy, apparently only as to that one employee, from a requirement of prior approval to a requirement that Curry or DeLisle specifically ask the employee to work overtime. *See White v. Denton Cnty.*, No. 4:13CV13, 2015 WL 5047955, at *6–7 (E.D. Tex. Aug. 26, 2015); *Tex. Dept. Pub. Safety v. Williams*, No. 03-08-00466-CV, 2010 WL 797145, at *5–6 (Tex. App.—Austin Feb. 19, 2010, no pet.) (mem. op.). On this record, we see a fact issue as to whether the overtime-restriction memorandum "well might" have dissuaded a reasonable worker in this context from making or supporting a Fair Labor Act compensation claim. *See White*, 2015 WL 5047955, at *6–7; *Williams*, 2010 WL 797145, at *5–6.

The District cites two authorities in support of the position that an employer's limitation on an employee's ability to work overtime cannot constitute an adverse employment action. The first authority is title 29, section 785.13 of the Code of Federal Regulations. *See* 29 C.F.R. 785.13 (stating that "In all such cases it is the duty of the management to exercise its control and see that the work is not

27

performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so."). This regulation addresses the need for employers to enforce policies restricting the performance of overtime. *See id*. This regulation does not address whether an employer's increase in the restriction that it places on overtime work as to a specific employee — coupled with threats of discipline for "insubordination and/or misconduct" resulting in action "up to and including a recommendation for termination" — after she files a Fair Labor Act compensation claim may constitute an adverse employment action in the employee's Fair Labor Act retaliation claim. *See id*. The District also cites an opinion form the United State Court of Appeals for the Fifth Circuit. *See Von Friewalde v. Boening Aerospace Operations, Inc.*, 339 Fed. Appx. 448, 459 (5th Cir. 2009). It is an unpublished opinion and is not precedential. *See* 5th Cir. R. 47.5.4. Even if it were, the court did not address any Federal Labor Act retaliation claim; instead, the court concluded that the employer's overtime policies may be considered and given effect in determining whether the employee has made the initial showing required in a Fair Labor Act compensation claim. *See id*.

The District has not cited any authority holding that an increased restriction on an employee's ability to work overtime coupled with threats of discipline "up to and including a recommendation for termination" cannot constitute an adverse employment action. The Third Court of Appeals has concluded that evidence an employer's action decreased the employee's opportunity to work overtime and earn overtime pay can constitute evidence that the action is an adverse employment action. *See Williams*, 2010 WL 797145, at *5–6. We conclude that the evidence raised a genuine fact issue as to whether DeLisle's memorandum constituted an

adverse employment action for the purposes of the prima facie case in Tooker's Federal Labor Act retaliation claim. *See White*, 2015 WL 5047955, at *6–7; *Williams*, 2010 WL 797145, at *5–6.

The final element of the Tooker's prima facie case requires some "causal link" between Tooker's filing of this lawsuit and the alleged adverse employment action — DeLisle issuing the memorandum to Tooker. *See Hagan*, 529 F.3d at 624. A causal link is shown when the evidence demonstrates that the adverse employment action was based in part on knowledge of the employee's protected activity. *See Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001). While temporal proximity is not determinative, close timing between the employee's protected activity and the adverse employment action may provide a causal link for the purposes of the employee's prima facie case in a retaliation claim. *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). The adverse employment action occurred less than a month after Tooker engaged in a protected activity under the Fair Labor Act. In the memorandum DeLisle noted Tooker's protected activity and appeared to indicate that he imposed the additional restriction on overtime work in response to the protected activity. We thus find a genuine fact issue as to whether there is a causal link between Tooker's protected activity and the adverse employment action. *See Mora v. Affiliated Customs Brokers USA, Inc.*, No. EP-13-CV-367-KC, 2015 WL 12551108, at *9 (E.D. Tex. Aug. 26, 2015).

The evidence raises a genuine fact issue as to each element of Tooker's prima facie case, and the District did not seek dismissal based on any alleged legitimate, nondiscriminatory reason, or on any other ground as to the Fair Labor Act retaliation claim based on DeLisle's memorandum. We thus sustain Tooker's

appellate challenge to the trial court's dismissal of this claim.[15]

### III. CONCLUSION

Because the evidence raises a genuine fact issue as to each element of Tooker's prima facie case in her Fair Labor Act retaliation claim based on the overtime-restriction memorandum, the trial court erred in dismissing this claim. We thus sustain the part of Tooker's fourth appellate issue in which she challenges the trial court's dismissal of this claim. As to all of the other claims whose dismissal Tooker challenges on appeal, we have addressed all of Tooker's appellate arguments necessary to the disposition of this appeal without finding any reversible error. We thus overrule all of Tooker's other appellate issues as well as the remainder of Tooker's fourth issue. We reverse the trial court's judgment as to the Fair Labor Act retaliation claim based on the overtime-restriction memorandum, remand this claim for further proceedings, and affirm the remainder of the trial court's judgment.


/s/    Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Boyce and Wise.

---

[15] We do not express any opinion on the ultimate merits of Fair Labor Act retaliation claim based on DeLisle's memorandum.