**Susette M. MCNEEL, Appellant**

v.

**CITATION OIL & GAS CORPORATION, Appellee**

**NO. 14-16-00180-CV**

Court of Appeals of Texas, Houston (14th Dist.).

Opinions filed July 11, 2017

Peter Costea, Houston, TX, for Appellant.

Vanessa M. Griffith, Dallas, TX, for Appellee.

Panel consists of Chief Justice Frost and Justices Brown and Jewell

## OPINION

Kevin Jewell, Justice

In this sex discrimination and retaliation suit under the Texas Commission on Human Rights Act ("TCHRA"), appellant Susette McNeel claims her former employer terminated her employment because she is a woman and because she engaged in protected conduct by reporting allegedly discriminatory actions by her direct supervisor. The employer moved for summary judgment, which the trial court granted. We affirm the trial court's judgment, concluding that McNeel presented no evidence to support either her sex discrimination or retaliation claims.

### Background

McNeel is a certified public accountant who worked for appellee Citation Oil and Gas Corporation in the company's tax department, from November 2005 until March 2012. McNeel began as a senior tax accountant and was promoted to supervisor. She was responsible for ensuring that Citation complied with applicable state and local tax law and secured appropriate tax credits. She consistently received favorable performance reviews.

McNeel's tax department supervisor was Tom Patrick. McNeel twice complained to Citation about Patrick. During her first report to Patrick's supervisor, Christopher Phelps, in 2011,[1] McNeel complained that Patrick made negative comments about female employees' weight (though not

McNeel's weight), yelled, slammed his phone, and "coughed excessively."

McNeel's second complaint stemmed from Patrick's alleged comment that he would "kill himself" if employees made errors in their work. In response to his comment, several employees allegedly expressed concern to McNeel, who then reported Patrick's comment to Nancy Anglin, Citation's vice president of human resources, in January 2012.

During McNeel's tenure at the company, Citation distributed a Corporate Compliance Policy Statement and Code of Conduct ("Code of Conduct"), which, among other things, prohibited conflicts of interest and required employees to disclose any business or financial interest or relationship that might interfere with the employee's ability to pursue Citation's best interests. Citation also distributed to employees an employee handbook, which, among other things, prohibited misusing Citation's confidential information. McNeel received the Code of Conduct and the employee handbook. Pursuant to the Code of Conduct, if employees had questions, they were to ask Citation's Chief Compliance Officer to explain or clarify any guideline.

While employed by Citation, McNeel formed an oil and gas tax consulting business, S.M. McNeel, CPA, PLLC, which operated under the trade name Enhanced Operating Recovery ("EOR"). EOR had one client, C&J Exploration, an oil and gas company that operated in Wagoner County, Oklahoma. More broadly, however, EOR marketed itself as a company that "specialize[d] in reducing Sales, Use and Severance Tax liability *for oil and gas producers*," which would include Citation and Citation's competitors. (Emphasis added). McNeel did not disclose her side busi-

---

1. This report occurred either in 2010, or by March 2011, at the latest.

ness to Citation. EOR's website portrayed as work performed by EOR at least one "case study" that McNeel admits was a tax-refund project that McNeel had worked on while employed at Citation.

In March 2012, Citation's revenue supervisor was reviewing other companies' tax applications as examples of how to complete the application. During her review, the revenue supervisor discovered that McNeel had signed a tax application on behalf of C&J Exploration, and the revenue supervisor notified her supervisor, who then notified Patrick. Patrick testified that he visited the revenue supervisor's office, where he viewed the tax application and EOR's website, which included the non-attributed "case study" of Citation's prior tax project. Roughly one week later, Citation fired McNeel for violating the company's Code of Conduct. Specifically, as set forth in Citation's response to McNeel's interrogatories, Patrick and Phelps made the decision to terminate McNeel's employment because they concluded McNeel "engaged in a business marketed to [Citation's] competitors, failed to disclose this conflict of interest, misappropriated [Citation's] business information, and exhibited poor judgment in connection with these activities." In a meeting with Patrick and Anglin, Patrick told McNeel she was being terminated for having a business that constituted a conflict of interest.

McNeel sued Citation under the TCHRA, claiming age discrimination, sex discrimination, and retaliation.[2] McNeel alleged that, while she was employed at Citation, Patrick "displayed abusive behavior toward her and other women" and "made rude and sexist comments to them and about them to [McNeel] and to other employees." McNeel claimed she was treated less favorably in the terms and conditions of her employment because of her gender and her age. She also alleged that Citation terminated her employment in retaliation for McNeel's complaints about Patrick's "unlawful and discriminatory conduct directed against her and other females." McNeel subsequently abandoned her age discrimination claim.

Citation moved for summary judgment on McNeel's claims, asserting, among other things, that (1) as to McNeel's sex discrimination claim, there is no evidence McNeel was treated less favorably than similarly situated men; (2) as to McNeel's retaliation claim, there is no evidence that McNeel engaged in a protected activity or McNeel did not engage in a protected activity as a matter of law; (3) as to McNeel's retaliation claim, there is no causal connection between McNeel's complaints about Patrick's conduct and Citation's decision to terminate McNeel's employment; and (4) as to both of McNeel's claims, there is no evidence that Citation's reason for terminating McNeel's employment was pretextual. The trial court granted Citation's motion without specifying the grounds on which it ruled.

McNeel now appeals the summary judgment, claiming, in a single issue, that genuine issues of material fact precluded summary judgment on both claims.

## Standard of Review

We review a trial court's grant of summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661

---

2. Before filing suit, McNeel exhausted her administrative remedies by filing a timely charge of discrimination and retaliation with the Texas Commission on Human Rights. *See* Tex. Lab. Code §§ 21.201–.202. The commission issued a Notice of Right to File a Civil Action. *See id.* §§ 21.208, 21.252. McNeel timely filed her civil action. *See id.* §§ 21.252, 21.254.

(Tex. 2005). In reviewing the trial court's summary judgment, "we apply the familiar standard of review appropriate for each type of summary judgment, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor." *Dias v. Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 675-76 (Tex. App.— Houston [14th Dist.] 2007, pet. denied). In reviewing a no-evidence summary judgment, we ascertain whether the nonmovant pointed out summary judgment evidence raising a genuine issue of fact as to the essential elements attacked in the no-evidence motion. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206-08 (Tex. 2002). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

Finally, when, as here, the trial court grants a motion for summary judgment without specifying the grounds, we will affirm the trial court's judgment if any of the independent grounds supporting the motion is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872-73 (Tex. 2000).

## Statutory Framework

■ McNeel sued Citation under the TCHRA. *See* Tex. Lab. Code §§ 21.001 *et seq.* The TCHRA was enacted to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." *Id.* § 21.001(1). Title VII is a federal law that prohibits employers from discriminating against employees on the basis of sex, race, color, national origin, and religion. *See* 42 U.S.C. §§ 2000e *et seq.* Although Texas courts enforce the plain meaning of the TCHRA and binding Texas precedent as to this statute's interpretation, when there is no binding precedent, Texas courts also look to federal law and federal cases for guidance in situations like today's case, in which the language of the TCHRA and the analogous federal statute contain the same or substantially similar language. *See* Tex. Lab. Code § 21.001; *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 505 (Tex. 2012); *Okpere v. Nat'l Oilwell Varco, L.P.*, No. 14-15-00694-CV, 524 S.W.3d 818, 826 n.6, 2017 WL 1086340, at *5 n.6 (Tex. App.—Houston [14th Dist.] Mar. 20, 2017, pet. filed).

As discussed in more detail below, the TCHRA prohibits employers from discharging an employee because of sex or from discriminating in any other manner against an employee in connection with compensation or the terms, conditions, or privileges of employment. Tex. Lab. Code § 21.051(1). The TCHRA also prohibits employers from retaliating against an employee who engages in certain protected activities. *Id.* § 21.055.

■ There are two alternative methods by which a plaintiff can establish discrimination or retaliation under the TCHRA. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476-77 (Tex. 2001). An employee can offer direct evidence of the employer's discriminatory actions or words. *Id.* at 476. " 'Direct evidence of discrimination is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.' " *Coll. of the Mainland v. Glover*, 436 S.W.3d 384, 392 (Tex. App.—

Houston [14th Dist.] 2014, pet. denied) (quoting *Jespersen v. Sweetwater Ranch Apartments*, 390 S.W.3d 644, 653 (Tex. App.—Dallas 2012, no pet.)).

Alternatively, because direct evidence of discrimination or retaliation is a "rarity" in employment cases, courts allow claims to proceed with indirect or circumstantial evidence of discrimination or retaliation. *See Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 434 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). Under this second method, Texas courts follow the burden-shifting mechanism set forth by the United States Supreme Court in *McDonnell Douglas*. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Glover*, 436 S.W.3d at 392.

 Under the *McDonnell Douglas* framework, as applied to the TCHRA, the plaintiff is entitled to a presumption of discrimination if the plaintiff meets the "minimal" initial burden of establishing a prima facie case of discrimination. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012).[3] The prima facie case raises an inference of discrimination because courts presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. *See id.* Once a plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000) (per curiam); *Okpere*, 524 S.W.3d at 822–23, 2017 WL 1086340, at *2. If an employer moving for summary judgment proves as a matter of law a legitimate, nondiscriminatory reason for the adverse employment

action, the burden then shifts to the employee to raise a genuine fact issue as to whether the employer's reason was a pretext for discrimination. *See M.D. Anderson Hosp. & Tumor Inst.*, 28 S.W.3d at 24; *Okpere*, 524 S.W.3d at 822–23, 2017 WL 1086340, at *2.

### Analysis

Though McNeel challenges the trial court's summary judgment in a single issue, we consider each of her two claims in turn.

### A. Sex discrimination claim

McNeel's first claim under the TCHRA is that Citation terminated her employment because she is a woman. *See* Tex. Lab. Code § 21.051(1).

 There is no direct evidence that Citation terminated McNeel's employment on the basis of her sex. *See Glover*, 436 S.W.3d at 393. In the absence of direct evidence of discrimination, we apply the *McDonnell Douglas* framework. *See Okpere*, 524 S.W.3d at 822–23, 2017 WL 1086340, at *2. For a claim of disparate treatment under the TCHRA, which is McNeel's theory, she can meet her prima facie burden by showing that she: (1) is a member of a protected class, (2) was qualified for her position, (3) was subject to an adverse employment action, and (4) was treated less favorably than similarly situated persons not in the protected class. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Navy v. Coll. of the Mainland*, 407 S.W.3d 893, 899 (Tex. App.—Houston [14th Dist.] 2013, no pet.). There is no dispute that McNeel was qualified for her job and that, as a female, she is a member of a protected class. Further-

---

**3.** There is no prima facie case requirement in the text of the TCHRA; rather, the mechanics of the prima facie case are products of case law. *See Garcia*, 372 S.W.3d at 638.

more, there is no dispute that McNeel suffered an adverse employment decision when she was terminated. Citation moved for summary judgment on the ground that there is no evidence McNeel was treated less favorably than similarly situated men. Thus, we address whether the summary judgment evidence raised a genuine fact issue on this element of McNeel's prima facie case.[4]

In her summary judgment response, McNeel identified one male employee, Curtis Carver, whom she alleged was situated similarly to her, but not terminated even though he engaged in the same prohibited conduct as McNeel.[5] The Supreme Court of Texas has concluded that "[e]mployees are similarly situated if their circumstances are comparable in all material respects." *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (per curiam); *Tooker v. Alief Indep. Sch. Dist.*, No. 14-15-00124-CV, 522 S.W.3d 545, 557, 2017 WL 61833, at *7 (Tex. App.—Houston [14th Dist.] Jan. 4, 2017, no pet.). The United States Court of Appeals for the Fifth Circuit has articulated a similar standard, saying that employees are situated similarly if their circumstances are "nearly identical." *See Perez v. Tex. Dep't of Crim. Justice, Institutional Div.*, 395 F.3d 206, 213 (5th Cir. 2004). Employees may be considered similarly situated "if their circumstances are comparable in all material respects, including

similar standards, supervisors[,] and conduct." *See Rosenberg v. KIPP, Inc.*, 458 S.W.3d 171, 177 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (internal quotation omitted). Further, to establish that employees are "comparable in all material respects," a plaintiff also must show "that there were no differentiating or mitigating circumstances as would distinguish the employer's treatment of them." *Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 435 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (internal quotation omitted).

To show discrimination based on disparate discipline, the disciplined and undisciplined employees' misconduct must be of "comparable seriousness." *Ysleta*, 177 S.W.3d at 917.

McNeel states that Carver had a side business buying and selling oil and gas leases.[6] McNeel alleges that Patrick told her that Carver worked on this private business during working hours and that Carver would ask Patrick for Patrick's opinion on certain aspects of the leases. Carver did not receive positive performance reviews, and Carver resigned in 2011 because of, according to Citation, "performance related concerns."

McNeel contends that she and Carver, who was Citation's controller in the accounting department, both were subject to the same Code of Conduct and both alleg-

---

4. We note that McNeel was replaced by a woman (who, incidentally, was McNeel's same age), and so we consider only Citation's treatment of McNeel's coworkers. *Accord, e.g., Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004) (noting that a plaintiff can meet the fourth element by showing she was replaced with a similarly qualified person who was not a member of the protected class).

5. In the trial court, McNeel also argued that another male employee, Scott Abel, was a

similarly situated employee. She has since abandoned her contention that Abel was similarly situated, focusing solely on Carver in her appellate brief.

6. Citation responds that Carver merely made "passive investments" that did not compete with either Carver's employment or Citation's business; Citation included as part of its summary judgment evidence an affidavit from Carver, who testified to that effect.

edly had a "side business" that, given Citation's industry position, would constitute a conflict of interest. These circumstances, she argues, make the two employees similarly situated, and so Citation's treatment of Carver—"allow[ing]" him to resign instead of terminating him for a conflict of interest—raises a fact issue of disparate discipline.

Citation responds that Carver is not similarly situated to McNeel because he obtained approval from Citation before investing in oil and gas leases, the decision to approve Carver's investment activity was made by a different person than the decision-makers involved in McNeel's termination, and Carver was assigned to a different supervisor than McNeel's supervisor. Citation also argues that Carver is not a permissible comparator because Carver's conduct and McNeel's conduct were not of "comparable seriousness."

■ We need not decide if McNeel raised a fact issue regarding whether she and Carver were similarly situated employees or whether their respective conduct was of comparable seriousness. *See Winters v. Chubb & Son, Inc.*, 132 S.W.3d 568, 576 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Assuming without deciding that McNeel established a prima facie case that her termination was an instance that amounted to disparate discipline, the burden then shifted to Citation to articulate a legitimate, nondiscriminatory reason for her termination. *See Dias*, 214 S.W.3d at 676. Citation articulated a nondiscriminatory reason, and McNeel did not raise a genuine issue of material fact regarding pretext for the following reasons.

In its motion for summary judgment, Citation argued and attached evidence showing legitimate, nondiscriminatory reasons for its termination decision, i.e., that McNeel was terminated for "multiple violations of company policy," specifically including operating a business that conflicted with her position at Citation and misappropriating company work product and confidential information for use in the other business.[7] This showing satisfies Citation's burden of producing a nondiscriminatory reason for its decision. *See Winters*, 132 S.W.3d at 576. Citation's burden is merely one of production, not persuasion. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Russo*, 93 S.W.3d at 437-38.

■ McNeel argues that Citation's stated reason for her termination is pretext for discrimination. To raise a fact issue on the pretext element of a discrimi-

---

7. On appeal, McNeel argues that Citation has "shifted" rationales or "embellished" "after the fact" reasons for her termination; these reasons, she asserts, cannot support Citation's contention that it had a nondiscriminatory reason for firing McNeel. *See Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 904 (5th Cir. 2012) ("ultimate issue is the employer's reasoning at the moment the questioned employment decision is made"). We agree with the federal cases McNeel cites, also cited and discussed in this footnote, that hold an employer cannot rely entirely on post hoc evidence for an adverse employment decision, but the record refutes McNeel's argument here. While her "termination slip" is not in the summary judgment record, portions of it were read into deposition testimony that is contained in the summary judgment record, and it stated that she was fired for "gross misconduct in violation of code of conduct." We do not decide whether such a non-specific statement indicates the contemporaneous reason for Citation's decision, because McNeel testified that Patrick "yelled at [her]. He said, 'You have a business called [EOR]. You are terminated effective immediately.... [T]his is a conflict of interest.' " We conclude that this is probative evidence of Citation's contemporaneous and nondiscriminatory reason for termination. *See, e.g., Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 237-38 (5th Cir. 2016).

nation or retaliation claim, the employee must present evidence "indicating that the nondiscriminatory reason given by the employer is false or not credible, and that the real reason for the employment action was unlawful discrimination." *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 814 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (internal quotation omitted). "A plaintiff can avoid summary judgment if the evidence, taken as a whole, creates a fact issue as to whether each of the employer's stated reasons was not what actually motivated the employer and creates a reasonable inference" that the employer acted with the intent to discriminate or retaliate. *Id.*; *see also Little v. Tex. Dep't of Crim. Justice*, 177 S.W.3d 624, 632 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("[T]he United States Supreme Court has made it clear that it is not sufficient merely to show that the employer's reasons are false or not credible; the plaintiff must prove that the employer discriminated intentionally."). "An employee's subjective belief that his employer has given a false reason for the employment decision is not competent summary judgment evidence." *Chandler*, 376 S.W.3d at 814.

Setting aside McNeel's subjective beliefs, there is less than a scintilla of evidence that McNeel's sex was the reason for her termination or that her side business—including the information on EOR's website taken from her employment at Citation—was not the reason for her termination. She admits that she created a business for which she performed the same services she provided to Citation, and that the business's website included "case studies" that, in fact, were projects McNeel had worked on while employed at

Citation.[8] She contends, though, that her actions did not violate the Code of Conduct or the employee handbook. This argument is insufficient to create a fact issue as to whether Citation's stated reason— McNeel's purported violation (or violations) of the Code of Conduct—was the real reason Citation terminated her employment or merely pretext for discrimination. *See, e.g., Wawarosky v. Fast Grp. Houston Inc.*, No. 01-13-00466-CV, 2015 WL 730819, at *8 (Tex. App.—Houston [1st Dist.] Feb. 17, 2015, no pet.) (mem. op.) (employee's assertion that his conduct did not violate company policy "fail[ed] to raise a fact issue regarding [supervisor's] belief that [employee] violated the policy"); *see also Nash v. Blood & Tissue Ctr. of Cent. Tex.*, No. 03-03-00763-CV, 2004 WL 2900483, at *6 (Tex. App.—Austin Dec. 16, 2004, no pet.) (mem. op.) ("Nash does not deny that he conducted an unauthorized background check on Benites; he only asserts that such conduct did not constitute a violation of [the employer's] policy. His claim does not provide a scintilla of evidence to overcome [the employer's] legitimate reasons for Nash's termination."). McNeel's subjective interpretation of the rules, or her disagreement over whether she violated them, is not sufficient to create a fact issue that Citation's stated reason was pretextual.

Similarly, we find unavailing McNeel's contentions that she could not have been terminated unless and until Citation ultimately "determined" she had violated the Code of Conduct, and that there is a fact question as to whether Citation actually made such a determination. Evidence of an imperfect or incomplete investigation is not sufficient to raise a fact

8. While McNeel argues in her opening brief that she did not advertise on her website based on any work she had done for Citation, she then expressly admits in her reply brief that she included information on EOR's website regarding a tax-refund project she worked on for Citation.

issue regarding pretext. *See, e.g., Dotson v. TPC Grp., Inc.*, No. 01-14-00233-CV, 2015 WL 1135890, at *7 (Tex. App.—Houston [1st Dist.] Mar. 12, 2015, no pet.) (mem. op.) (employee's complaint that he was not afforded the opportunity to explain his actions failed to raise a fact issue as to employer's good faith belief of misconduct); *see also Chandler*, 376 S.W.3d at 818 ("[T]he ultimate inquiry is whether [the employer] had a good faith belief that Chandler violated the workplace rules.").

We conclude that McNeel did not offer more than a scintilla of probative evidence that Citation's stated reason for her termination was pretext for discrimination. *See Exxon Mobil Corp. v. Hines*, 252 S.W.3d 496, 510 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); *Nash*, 2004 WL 2900483, at *6; *see also Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) (employee's "assertion of innocence alone does not create a factual issue as to the falsity of [the employer's] proffered reason for terminating him"). Accordingly, the trial court did not err in granting summary judgment on McNeel's sex discrimination claim. *See Hines*, 252 S.W.3d at 510; *Chandler*, 376 S.W.3d at 822.

## B. Retaliation claim

▆▆▆ McNeel's second claim is that Citation terminated her employment in retaliation after McNeel complained about Patrick's conduct. *See* Tex. Lab. Code § 21.055. Under the TCHRA, an employer may not retaliate against an employee who engages in any of the following protected activities: opposing a discriminatory practice; making or filing a charge; filing a complaint; or testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing. *Id.*

▆▆▆ There is no direct evidence of retaliation, but McNeel is entitled to a presumption of retaliation if she can establish the elements of a prima facie case. *See Garcia*, 372 S.W.3d at 634. To establish a prima facie case for her retaliation claim, McNeel must show that: (1) she engaged in one or more protected activities, (2) an adverse employment action occurred, and (3) there exists a causal link between the protected activity and the adverse action. *See San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 137 (Tex. 2015). There is no dispute that an adverse employment action occurred—McNeel's employment termination—but Citation asserted a summary judgment ground that there is no evidence McNeel engaged in any protected activity. McNeel contends that she engaged in protected activities by opposing a discriminatory practice and by complaining to Phelps and Anglin about Patrick's conduct.[9]

McNeel alleges that she opposed Patrick's "unlawful and discriminatory conduct directed against her and other females." More specifically, McNeel contends that she engaged in a protected activity by: (1) meeting with Phelps to report Patrick's comments about overweight female employees, his conduct in slamming his phone and yelling, and his excessive coughing; (2) meeting with Anglin to report Patrick's comment that he would kill himself if his subordinates made mistakes in their work; (3) threatening Patrick that she would report him if he continued to comment on a female employee's weight; (4) admonishing Patrick not to yell at her after he yelled at her once

9. The parties also dispute causation, but because we resolve McNeel's retaliation claim on protected-activity grounds, we need not reach the third prong of McNeel's prima facie case.

in 2006; and (5) complaining to Phelps about a message Patrick left on McNeel's voicemail in 2010, in which Patrick yelled, "how dare you, how dare you question my authority."[10]

The flaw in McNeel's argument is that she never specifies the discriminatory nature of Patrick's conduct. Not every incident of rude or offensive behavior implicates Title VII[11] or the TCHRA. *See Lee v. Harris Cnty. Hosp. Dist.*, No. 01-12-00311-CV, 2013 WL 5637049, at *5 (Tex. App.—Houston [1st Dist.] Oct. 15, 2013, pet. denied) (mem. op.). Rather, to establish that an employee opposed an employer's discriminatory practice, the employee must demonstrate a good-faith, reasonable belief that the underlying discriminatory practice violated the TCHRA. *See Nicholas*, 461 S.W.3d at 137; *Ford*, 483 S.W.3d at 592. McNeel does not identify any underlying TCHRA violation, but instead simply argues that her complaints "are sufficient to constitute protected actions because they are complaints about discrimination." McNeel fails to explain how Patrick's alleged conduct, assuming its truth, amounted to "discrimination." *See, e.g., Michael v. City of Dallas*, 314 S.W.3d 687, 692 (Tex. App.—Dallas 2010, no pet.) (explaining that plaintiff cannot establish prima facie case of employment discrimination through conclusory allegations or subjective beliefs and feelings). We conclude that McNeel has not raised a genuine fact issue as to whether she engaged in a protected activity by opposing a discriminatory practice.[12] *See, e.g., Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 349 (5th Cir. 2007) (opposing conduct that is not discriminatory in nature is not protected activity under Title VII).

Moreover, were we to construe McNeel's retaliation claim as premised on an argument that she engaged in protected activity by reporting sexual harassment, her claim still would fail. Opposition to sexual harassment is a protected activity irrespective of the merits of any underlying claim of sexual harassment. *See City of Waco v. Lopez*, 259 S.W.3d 147, 151 (Tex. 2008); *Houston Methodist San Jacinto Hosp. v. Ford*, 483 S.W.3d 588, 591-92

---

10. In her appellate briefs, McNeel recites other instances of allegedly abusive and inappropriate behavior by Patrick. There is no record support, however, that she opposed or complained about any of Patrick's conduct or behavior other than the discrete instances mentioned above. *See Ford*, 483 S.W.3d at 592-93 & n.3 (although an employee need not use "magic words" to oppose sexual harassment, the employee must indicate what alleged discriminatory conduct is at issue); *see also Nicholas*, 461 S.W.3d at 137 (in reviewing the discriminatory character of the reported conduct, "what counts is *only* the conduct that the person opposed") (emphasis added).

McNeel also asserts that she confronted Patrick about "the many and abusive comments Patrick made to and about women in the workplace," but she does not provide any record citation for this assertion. We therefore do not consider any such confrontation as evidence of her opposing a discriminatory practice. *See* Tex. R. App. P. 38.1(i) (brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record).

11. *See* 42 U.S.C. §§ 2000e *et seq.*

12. McNeel never asserts that she "file[d] a complaint," which is a protected activity under the statute. Tex. Lab. Code § 21.055(3). Rather, she points to her complaints made to Phelps and Anglin as evidence of her opposition to Patrick's discriminatory practices. *See id.* § 21.055(1). Regardless, the inquiry would be the same. For a complaint filed with an employer to constitute a protected activity, the complaint must indicate the discrimination occurred against one of the classes protected under the Act. *See Lee*, 2013 WL 5637049, at *6; *see also Gonzalez v. Champion Techs., Inc.*, 384 S.W.3d 462, 473 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (complaint relating to discrimination constitutes protected activity).

(Tex. App.—Houston [14th Dist.] 2015, pet. denied). Again, however, McNeel's opposition must be based on a good-faith, reasonable belief that the underlying sexual harassment violated the TCHRA. *See Nicholas,* 461 S.W.3d at 137; *Ford,* 483 S.W.3d at 592; *see also Waffle House, Inc. v. Williams,* 313 S.W.3d 796, 804 (Tex. 2010) (sexual harassment is a recognized cause of action under Title VII and the TCHRA).[13] A subjective belief of sexual harassment, alone, is insufficient to raise a fact issue as to whether the employee's ostensible opposition constituted a protected activity. *See Ford,* 483 S.W.3d at 592.

▇▇▇ We conclude that no reasonable person would believe that Patrick's conduct, as described by McNeel, amounted to sexual harassment actionable under the TCHRA. *See Nicholas,* 461 S.W.3d at 138; *Ford,* 483 S.W.3d at 592-93. The core concept of a hostile-work-environment sexual-harassment claim is that sexual harassment prevents women from competing on an equal basis with men: "A hostile environment claim embodies a series of criteria that expresses extremely insensitive conduct against women, conduct so egregious as to alter the conditions of employment and destroy their equal opportunity in the workplace." *DeAngelis v. El Paso Mun. Police Officers Ass'n,* 51 F.3d 591, 593 (5th Cir. 1995). "Offhand comments and isolated incidents, unless extremely serious, typically will not amount to discriminatory changes in the terms, conditions, or privileges of employment." *Nicholas,* 461 S.W.3d at 138 (quotations omitted).

Here, taking McNeel's allegations as true, McNeel could not have reasonably believed that Patrick's conduct created a hostile work environment by sexual harassment. In fact, we note that McNeel alleges in her petition that she tendered

her resignation in March 2011, but subsequently withdrew it. It is hard to reconcile McNeel's decision to remain in Citation's employ with her complaints of Patrick's conduct that occurred prior to March 2011, such as Patrick's yelling at McNeel in 2006, Patrick's comments on a female employee's weight, some of which occurred in 2008 or 2009, and the message Patrick left on McNeel's voicemail in 2010.

McNeel cites a federal case to support her argument that Patrick's conduct was potentially actionable discrimination, but this case actually demonstrates the weakness in her claim. In *EEOC v. National Education Association,* 422 F.3d 840, 843-44 (9th Cir. 2005), the evidence showed that a male executive shouted at his female employees "frequent[ly], profane[ly], and often public[ly]," invaded his employees' personal space, and used threatening physical gestures. The court held that the executive's "pattern of verbal and physical intimidation" was allegedly a "daily thing," and thus "sufficiently severe to satisfy" a Title VII claim. *Id.* at 847. The executive's behavior in *EEOC* is the type of "extremely serious" discriminatory conduct targeted by Title VII and the TCHRA. *See Nicholas,* 461 S.W.3d at 138. In contrast, Patrick's conduct, as alleged by McNeel, is not "so egregious as to alter the conditions of employment," which would be actionable under Title VII or the TCHRA. *See DeAngelis,* 51 F.3d at 593. While McNeel may have been personally offended by Patrick's comments or behavior, reporting mere "offensive" behavior is not actionable as a retaliation claim unless it is also discriminatory. *See, e.g., Garza v. Laredo Indep. Sch. Dist.,* 309 Fed.Appx. 806, 810 (5th Cir. 2009) (per curiam) ("To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable

---

**13.** There are two general types of sexual harassment: quid pro quo and hostile work environment. *See Waffle House,* 313 S.W.3d at

804. McNeel's allegations seemingly concern only the latter.

person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so."); *Martinez v. Wilson Cnty.*, No. 04-09-00233-CV, 2010 WL 114407, at *3 (Tex. App.—San Antonio Jan. 13, 2010, no pet.) (mem. op.) ("Although Martinez may have found Cleveland's behavior rude or offensive, there is no indication that it implicated the TCHRA.").

Further, there is no evidence that she alleged discrimination against Patrick during either meeting with Phelps or Anglin. *See Lee*, 2013 WL 5637049, at *6 ("Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient."). Nothing that McNeel recounted to Phelps or Anglin would put Citation on notice that McNeel's complaints were based on sexual harassment or sex discrimination. *See Harris-Childs v. Medco Health Sols., Inc.*, 169 Fed.Appx. 913, 916 (5th Cir. 2006) (per curiam) (employee, who did not demonstrate that she put her employer on notice that her complaint was based on racial or sexual discrimination, failed to show that she engaged in a protected activity under Title VII and accordingly could not show retaliation).

Only Patrick's comments about an overweight employee could even arguably be considered relating to an employee's sex (because she happened to be female), but the crux of Patrick's comments related to the employee's weight, not her sex. Similarly, McNeel asserts that she told Anglin that Phelps was a "threat" to women, based on his purported threat of suicide, but it is not reasonable to believe that such a threat of *self*-harm was rooted in discriminatory animus toward women generally. At most, McNeel made a vague charge of discrimination to Phelps or Anglin, but a vague charge of discrimination

will not invoke protection under the statute. *Accord Azubuike v. Fiesta Mart, Inc.*, 970 S.W.2d 60, 65 (Tex. App.—Houston [14th Dist.] 1998, no pet.), *disapproved of on other grounds by Glassman v. Goodfriend*, 347 S.W.3d 772, 781-82 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

We conclude that the summary judgment evidence does not raise a genuine fact issue as to whether McNeel engaged in a protected activity. *See Warrick v. Motiva Enters., L.L.C.*, No. 14-13-00938-CV, 2014 WL 7405645, at *9 (Tex. App.—Houston [14th Dist.] Dec. 30, 2014, no pet.) (mem. op.). In the absence of a statutorily protected activity, there can be no cognizable retaliation claim under the TCHRA. *See Dias*, 214 S.W.3d at 676. The trial court did not err in granting summary judgment on McNeel's retaliation claim.

## Conclusion

We affirm the trial court's summary judgment.

(Frost, C.J., concurring).

Kem Thompson Frost, Chief Justice, concurring.

I concur in the court's judgment, but I respectfully disagree with the majority's reasoning. I write separately to make two points.

First, as to the sex-discrimination claim, this court can affirm the trial court's judgment but not for the reason the majority gives—that there is no evidence the defendant's reason for terminating the plaintiff's employment was a pretext for discrimination. We cannot affirm on this no-evidence ground unless the defendant presented summary-judgment evidence showing that the defendant had a legitimate, nondiscriminatory reason for the termination. Because the defendant did not present any such evidence, this court may not properly affirm on this ground. Nonetheless, we

may affirm the summary judgment as to this claim because the plaintiff did not raise a genuine fact issue as to whether the defendant treated the plaintiff less favorably than similarly situated male employees.

Second, as to the plaintiff's retaliation claim, the court is correct to affirm the trial court's summary judgment on the ground that there is no evidence that the plaintiff engaged in a protected activity, but the majority looks to the wrong thing in doing so—that the plaintiff did not quit her job. Whether the plaintiff quit is not relevant to the issue of whether a reasonable person could have believed that the workplace conduct described by the plaintiff created a hostile work environment. So, the court should not address this issue in its analysis.

***For this court to affirm the summary judgment on the ground upon which the majority relies, the defendant must have produced summary-judgment evidence showing that the defendant had a legitimate, nondiscriminatory reason for terminating the plaintiff's employment.***

This court may affirm the trial court's summary judgment based only on a ground expressly stated in the summary-judgment motion.[1] The majority affirms the summary judgment as to appellant Susette McNeel's sex-discrimination claim on a ground that appellee Citation Oil & Gas Corporation expressly presented in its motion—there is "no evidence that Citation's reason for terminating [McNeel] was pretextual."[2] Even presuming for argument's sake that Citation otherwise properly could seek summary judgment based on this no-evidence ground, for Citation to assert this no-evidence ground, McNeel must have the burden of proving the challenged element at trial (that Citation's purported nondiscriminatory reason for terminating McNeel's employment was a pretext for discrimination).[3] But, McNeel did not have any burden to prove this challenged element unless and until Citation presented summary-judgment evidence of a legitimate, nondiscriminatory reason upon which Citation based its March 2012 termination of McNeel's employment.[4]

In its summary-judgment motion and in its appellate brief, Citation correctly acknowledged this burden. And, the majority appropriately notes that for the court to

---

1. *See Henkel v. Norman*, 441 S.W.3d 249, 251 n.1 (Tex. 2014); *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993).

2. Citation did not expressly present a traditional ground asserting that the Citation's summary-judgment evidence proved as a matter of law a legitimate, nondiscriminatory reason for Citation's termination of McNeel's employment. Thus, this court may not affirm on this ground. *See Henkel*, 441 S.W.3d at 251 n.1; *Stiles*, 867 S.W.2d at 26. In any event, even if Citation had presented this ground expressly, Citation still would have had the burden of producing summary-judgment evidence showing Citation's reason for terminating McNeel's employment. *See Okpere v. National Oilwell Varco, L.P.*, 524 S.W.3d 818, 822–23, 828–29, 2017 WL 1086340, at *2, *7 (Tex. App.—Houston [14th Dist.] Mar. 20, 2017, pet. filed).

3. *See* Tex. R. Civ. P. 166a(i) (stating that "[a]fter adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense *on which an adverse party would have the burden of proof at trial*") (emphasis added); *Brown v. Hearthwood II Owners Ass'n*, 201 S.W.3d 153, 157–58 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (stating that a movant could not obtain a no-evidence summary judgment on an issue because the nonmovant did not have the burden of proving that issue at trial).

4. *See Okpere*, 524 S.W.3d at 822, 2017 WL 1086340, at *2 (concluding that, if an employer moving for summary judgment proves as a matter of law a legitimate, nondiscriminatory

affirm on this ground, Citation must have presented evidence on this issue.[5] So, apparently, everyone (McNeel, Citation, and all the justices on this panel) agrees that, under applicable law, this court cannot affirm the trial court's summary judgment on this no-evidence ground unless Citation presented summary-judgment evidence showing that Citation had a legitimate, nondiscriminatory reason for terminating McNeel's employment.[6] Citation did not do so.

***Because the defendant failed to produce summary-judgment evidence showing a legitimate, nondiscriminatory reason for terminating the plaintiff's employment, this court should not affirm on the no-evidence-of-pretext ground.***

In its summary-judgment motion, Citation characterizes its reason(s) for terminating McNeel in several ways:

- "When Citation learned of [McNeel's] business, [Citation] terminated [McNeel's] employment for multiple violations of company policy."
- "McNeel was not terminated because of her sex, age, or alleged prior complaints of discrimination."
- "[McNeel] was terminated because she violated her employer's Code of Conduct when she set up a business that was a conflict of interest with her current position, failed to disclose the potential conflict of interest

or obtain approval, and misappropriated company work product and confidential information for use in her side business."

- "Citation concluded that McNeel had violated company policies in several respects. (*Id.* at 152, 155–58.) Accordingly, Citation terminated McNeel's employment in March 2012."

Though Citation cited the summary-judgment evidence for various propositions, including McNeel's alleged misconduct, when Citation mentioned its reason(s) for terminating McNeel's employment, Citation did not cite any evidence. Nor did Citation state in the motion that it had submitted evidence showing a legitimate, nondiscriminatory reason for terminating McNeel's employment. Though Citation submitted various exhibits in support of its summary-judgment motion, Citation did not present any summary-judgment evidence showing Citation's reason(s) for terminating McNeel's employment or showing that any such reason was legitimate and nondiscriminatory. Citation submitted deposition testimony indicating that Citation sent a termination letter to McNeel, and Citation submitted affidavits to prove matters related to other summary-judgment issues, but Citation did not submit an affidavit from human-resources personnel or the individual

---

reason for the adverse employment action, then the employee has the burden to raise a genuine fact issue as to whether the employer's reason was a pretext for discrimination); *Johnson v. City of Houston*, 203 S.W.3d 7, 12 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (determining whether the employer "produced evidence" of a legitimate, nondiscriminatory reason for the adverse employment action); *Gold v. Exxon Corp.*, 960 S.W.2d 378, 381 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (stating that, if the plain-

tiff-employee presents a prima facie case of discrimination, "the defendant-employer has the burden of producing evidence showing a legitimate, nondiscriminatory reason for the adverse employment actions") (internal quotations omitted).

**5.** *See ante* at 759–60.

**6.** *See Okpere*, 524 S.W.3d at 822–23, 2017 WL 1086340, at *2; *Johnson*, 203 S.W.3d at 12; *Gold*, 960 S.W.2d at 378.

who decided to discharge McNeel, stating Citation's reason(s) for terminating McNeel's employment.

In support of Citation's assertion that McNeel had "violated company policies in several respects," Citation cited to pages from the transcript of Tom Patrick's deposition. In these pages, Patrick, Citation's vice president of taxation, testified:

- At some point Patrick told Ms. Anglin that Patrick had decided to terminate McNeel "for conflict of interest."

- Patrick read the letter of termination before he signed it.

- In the letter, Patrick stated that McNeel owed Citation fiduciary duties.

- The statement in the termination letter—that McNeel breached her fiduciary duties by establishing a business that provides advice and services to companies that compete with Citation—is a true statement.

Patrick did not say anything else about the contents of the termination letter, which Citation did not submit in its summary-judgment evidence. Patrick's statement that he told Ms. Anglin he had decided to terminate McNeel "for conflict of interest" is not evidence that Patrick discharged McNeel for that reason. Though Patrick indicated that McNeel's termination letter refers to alleged breaches of fiduciary duty, Patrick did not testify that Citation terminated McNeel for these breaches or that the termination letter

said so. In these deposition excerpts, Patrick did not testify that the alleged misconduct to which he referred was the reason for McNeel's discharge.[7]

According to the majority, "[i]n its motion for summary judgment, Citation argued and attached evidence showing legitimate, nondiscriminatory reasons for its termination decision, i.e., that McNeel was terminated for 'multiple violations of company policy,' specifically including operating a business that conflicted with her position at Citation and misappropriating company work product and confidential information for use in the other business."[8] Though the majority concludes that Citation attached evidence to its motion proving these reasons for discharging McNeel, the record reflects that Citation attached no such evidence.[9] Likewise, though the majority concludes that Citation was required to submit evidence of its reasons for terminating McNeel's employment at the time Citation made the decision to do so, Citation did not submit any evidence on this point.[10] Nor did Citation present any evidence showing that any termination reason was legitimate and nondiscriminatory. Therefore, McNeel never had any burden to prove that Citation's purported nondiscriminatory reason for terminating McNeel's employment was a pretext for discrimination, and this court may not affirm the trial court's judgment on the ground that there was no evidence Citation's purported nondiscriminatory reason for discharging McNeel was a pretext for discrimination.[11]

7. Even if Patrick had testified to this effect, this reason would not be the same as the reasons recited by Citation in its summary-judgment motion.

8. *Ante* at 759.

9. The majority also refers to evidence McNeel submitted in her summary-judgment re-

sponse, but Citation did not submit this evidence. *See ante* at 759–60, n.7.

10. *See ante* at 759–60 & n.7. The majority reaches this conclusion in footnote 7 of the majority opinion, on an issue of apparent first impression in any Texas state court.

*This court may affirm the summary judgment as to the sex-discrimination claim because the plaintiff did not raise a genuine fact issue as to whether the defendant treated her less favorably than similarly situated male employees.*

The summary-judgment record contains no direct evidence that Citation terminated McNeel's employment on the basis of her sex.[12] In the absence of direct evidence of discrimination, we are to apply the *McDonnell Douglas* framework.[13] For a claim of disparate treatment under the Texas Commission on Human Rights Act, which is McNeel's theory, she can meet her prima facie burden by showing that she: (1) is a member of a protected class, (2) was qualified for her position, (3) was subject to an adverse employment action, and (4) was treated less favorably than similarly situated persons not in the protected class.[14] There is no dispute that McNeel was qualified for her job and no dispute that, as a female, she is a member of a protected class. Likewise, there is no dispute that McNeel suffered an adverse

employment decision when Citation terminated her employment. Citation moved for summary judgment on the ground that there is no evidence McNeel was treated less favorably than similarly situated men. Thus, this court should address whether the summary-judgment evidence raised a genuine fact issue on this element of McNeel's prima facie case.[15]

In her summary-judgment response, McNeel identified one male employee—a controller in the accounting department—whom McNeel alleged was situated similarly to her yet not terminated even though he engaged in the same prohibited conduct as McNeel.[16] The Supreme Court of Texas has concluded that "[e]mployees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." [17] The United States Court of Appeals for the Fifth Circuit has articulated a similar standard, saying that employees are similarly situated if their circumstances are "nearly identical." [18] To establish that employees are "comparable in all material respects," a plaintiff must

11. *See* Tex. R. Civ. P. 166a(i); *Okpere,* 524 S.W.3d at 822–23, 2017 WL 1086340, at *2; *Johnson,* 203 S.W.3d at 12; *Brown,* 201 S.W.3d at 157-58; *Gold,* 960 S.W.2d at 378.

12. *See Okpere,* 524 S.W.3d at 822–23, 2017 WL 1086340, at *2.

13. *See id.*

14. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Navy v. Coll. of the Mainland,* 407 S.W.3d 893, 899 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

15. McNeel was replaced by a woman and so this court should consider only Citation's treatment of McNeel's coworkers. *Accord, e.g., Rachid v. Jack In The Box, Inc.,* 376 F.3d 305, 309 (5th Cir. 2004) (noting that a plaintiff can meet the fourth element by showing she was replaced with a similarly qualified person

who was not a member of the protected class).

16. In the trial court, McNeel also argued that another male employee was a similarly situated employee. McNeel since has abandoned her contention that he was similarly situated, focusing solely on the controller in her appellate brief.

17. *Ysleta Indep. Sch. Dist. v. Monarrez,* 177 S.W.3d 915, 917 (Tex. 2005) (per curiam). *See Exxon Mobil Corp. v. Rincones,* 520 S.W.3d 572, 584, 2017 WL 2324710, at *7 (Tex. May 26, 2017); *Tooker v. Alief Indep. Sch. Dist.,* 522 S.W.3d 545, 557, 2017 WL 61833, at *7 (Tex. App.—Houston [14th Dist.] Jan. 4, 2017, no pet.).

18. *See Perez v. Tex. Dep't of Criminal Justice, Institutional Div.,* 395 F.3d 206, 213 (5th Cir. 2004); *Exxon Mobil Corp.,* 520 S.W.3d at 584, 2017 WL 2324710, at *7.

show "that there were no differentiating or mitigating circumstances as would distinguish the employer's treatment of them."[19] To show discrimination based on disparate discipline, the disciplined and undisciplined employees' misconduct must be of "comparable seriousness."[20]

McNeel states that the controller had a side business buying and selling oil and gas leases.[21] McNeel alleges that Patrick told her that the controller worked on this private business during working hours and that the controller would ask Patrick for Patrick's opinion on certain aspects of the leases. The controller did not receive positive performance reviews, and the controller resigned in 2011 because of, according to Citation, "performance related concerns."

McNeel contends that she and the controller both were subject to the same Code of Conduct and both allegedly had a "side business" that, given Citation's industry position, would constitute a conflict of interest. These circumstances, she argues, make the two employees similarly situated, and so Citation's treatment of the controller—"allow[ing]" him to resign instead of terminating him for a conflict of interest—raises a fact issue of disparate discipline.

Citation responds that the controller is not similarly situated to McNeel because he obtained approval from Citation before investing in oil and gas leases, the decision to approve the controller's investment activity was made by a different person than the decision-makers involved in McNeel's termination, and the controller reported to a different supervisor than McNeel's supervisor. Citation also argues that the controller is not a permissible comparator because the controller's conduct and McNeel's conduct were not of "comparable seriousness."

Under the applicable standard of review, the summary-judgment evidence does not raise a genuine fact issue as to whether the circumstances of McNeel and the controller were comparable in all material respects or as to whether McNeel's misconduct was of "comparable seriousness" to the controller's misconduct.[22] Because the summary-judgment evidence does not raise a genuine fact issue as to whether Citation treated McNeel less favorably than similarly situated male employees, this court should affirm the summary judgment as to the sex-discrimination claim on this basis.[23]

***The majority should not rely upon the plaintiff's failure to quit as support for the court's conclusion that no reasonable person could have believed that a hostile work environment existed.***

In affirming the trial court's summary judgment as to McNeel's retaliation claim on the ground that there is no evidence that she engaged in a protected activity,

19. *Donaldson v. Texas Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 435 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (internal quotation omitted).

20. *Ysleta Indep. Sch. Dist.*, 177 S.W.3d at 917.

21. Citation responds that the controller merely made "passive investments" that did not compete with either the controller's employment or Citation's business; Citation included as part of its summary-judgment evidence an affidavit from the controller, who testified to that effect.

22. *See Exxon Mobil Corp.*, 520 S.W.3d at 584–86, 2017 WL 2324710, at *7–8; *Tooker*, 522 S.W.3d at 556–57, 2017 WL 61833, at *7; *Coll. of the Mainland v. Glover*, 436 S.W.3d 384, 393–94 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

23. *See Exxon Mobil Corp.*, 520 S.W.3d at 584–86, 2017 WL 2324710, at *7–8; *Tooker*, 522 S.W.3d at 556–57, 2017 WL 61833, at *7; *Coll. of the Mainland*, 436 S.W.3d at 393–94.

the majority correctly determines that no reasonable person could have believed that Patrick's conduct created a hostile work environment. But, the majority loses its way in reasoning that "[i]t is hard to reconcile McNeel's decision to remain in Citation's employ with her complaints of Patrick's conduct that occurred prior to March 2011." [24] Courts adjudicating hostile-work-environment claims recognize the reality that even in the face of a hostile work environment, quitting the job may not be a true option for the employee. Hence, as the cited cases show, courts refuse to recognize an employee's failure to quit as relevant to the hostile-work-environment inquiry.

A hostile work environment is one in which discriminatory conduct is sufficiently severe or pervasive to alter the conditions of the employee's employment and to create an abusive working environment.[25] For a hostile work environment to exist, the working conditions need not be so intolerable that a reasonable person would feel compelled to resign.[26] Thus, McNeel's failure to quit in the face of Patrick's alleged conduct is not relevant to the issue of whether that conduct created a hostile work environment.[27] An employee is not required to falter under the weight of a hostile work environment before the employee's discrimination claim becomes actionable.[28] If the evidence would allow a reasonable person to believe that Patrick's conduct created a hostile work environ-

ment, McNeel's perseverance in staying on the job would not contradict or undermine this evidence.[29] Thus, the majority should not point to or rely upon McNeel's failure to quit her job as support for the court's conclusion that no reasonable person could have believed that Patrick's conduct created a hostile work environment.[30] The former is not legally germane to the latter, and the law recognizes no connection between the two.

So, though I join the court's judgment, I respectfully decline to join the majority opinion.

---

**24.** *Ante* at 762.

**25.** *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 805–06 (Tex. 2010).

**26.** *Id.*

**27.** *See id.*; *Perez-Cordero v. Wal-Mart Puerto Rico, Inc.*, 656 F.3d 19, 30 (1st Cir. 2011).

**28.** *See Waffle House, Inc.*, 313 S.W.3d at 805–06; *Perez-Cordero*, 656 F.3d at 30; *Rivera v.*

*Hospital Metropolitano Dr. Susoni, Inc.*, No. 10-1075, 2012 WL 3777003, at *12, n.7 (D.P.R. Feb. 27, 2012).

**29.** *See Waffle House, Inc.*, 313 S.W.3d at 805–06; *Perez-Cordero*, 656 F.3d at 30; *Rivera*, 2012 WL 3777003, at *12, n.7.

**30.** *See Waffle House, Inc.*, 313 S.W.3d at 805–06; *Perez-Cordero*, 656 F.3d at 30; *Rivera*, 2012 WL 3777003, at *12, n.7.