

## NUMBER 13-23-00269-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

ESMERALDA GONZALEZ,                                        Appellant,

v.

CS AUTO, LTD AND LOCO
MANAGEMENT COMPANY, L.L.C.,                               Appellees.

## ON APPEAL FROM THE 398TH DISTRICT COURT
## OF HIDALGO COUNTY, TEXAS

## OPINION

Before Chief Justice Tijerina and Justices Silva and West
Opinion by Justice Silva

This is an appeal from an order[1] granting a motion to dismiss claims pursuant to § 148.003(f) of the Texas Pandemic Liability Protection Act (PLPA).[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 148.003(f). Appellant[3] Esmeralda Gonzalez, sued appellees CS Auto, LTD and LoCo Management Company, L.L.C. (collectively, South Texas Buick GMC) following the death of Leonzo Gonzalez,[4] a former employee of South Texas Buick GMC in McAllen, Texas, a business owned by appellees. Esmeralda argues that the trial court abused its discretion in granting the dismissal of all her claims under § 148.003(f) for failure to provide a sufficient expert report. *See id.* We affirm.

## I.    BACKGROUND

On March 22, 2020, the Hidalgo County Judge issued an order prohibiting non-essential retail establishments from servicing customers following the insurgence of the coronavirus disease 2019 (COVID-19) cases. Business operations providing essential services were allowed to remain open. Texas Governor Greg Abbott similarly issued an executive order on March 31, 2020, directing persons in Texas to minimize social

---

[1] Because the May 17, 2023 Order ("Order") being appealed dismisses all of appellant's claims, and appellees raised no cross-claims other than requests for attorney's fees and costs, which were denied in the Order, the Order disposes of all claims in the case and is a final judgment. *See In re Lakeside Resort JV, LLC*, 689 S.W.3d 916, 922 (Tex. 2024) (reaffirming that an order that "actually disposes of every remaining issue in a case" reflected in the record, is a final order).

[2] TEX. CIV. PRAC. & REM. CODE ANN. §§ 148.001–.005.

[3] The Petition and the Order list the plaintiff as "Esmeralda Gonzalez, individually, and ANF of Decedent's surviving children," however, the petition does not actually name any of the children, nor does it provide any basis on which Esmeralda Gonzalez would be appearing as next friend (e.g. minority or disability), and it is signed by counsel as "Attorney for Plaintiff Esmeralda Gonzalez." Numerous other documents in the appellate record reflect that all of the surviving children are adults. We further note that the notice of appeal is taken solely by "Esmeralda Gonzalez" and that the style of the notice of appeal reflects only Esmeralda Gonzalez as plaintiff. We reform the style accordingly in this appeal.

[4] Because Esmeralda and Leonzo share a surname, we will refer to them by their first names.

gatherings and in-person contact, except where necessary to provide or obtain essential services.

South Texas Buick GMC remained open for business throughout the coronavirus pandemic. On or about July 1, 2020, Leonzo was sent home early from work due to sickness and was hospitalized approximately two days later, diagnosed with COVID-19. Leonzo died in the hospital on July 21, 2020.

On July 21, 2022, Esmeralda sued South Texas Buick GMC, alleging premises liability, negligent conduct of activity on the premises, general negligence, negligence per se, and wrongful death. Esmeralda argued that South Texas Buick GMC violated several governmental orders and failed to "implement safety procedures [and] protocols to reduce the spread of COVID[-]19"; "provide adequate personal protective equipment [(PPE)]"; "monitor its employees and take immediate action to protect other employees when it discovered employees were sick"; "provide gloves, masks, face shields, hand sanitizers"; "provide [a] safe work environment for its employees"; "provide necessary and proper procedures for dealing with a known hazard"; "take any corrective action to prevent the spread of COVID[-]19 at the workplace"; and "warn [Leonzo] of the unsafe condition." Esmeralda sought damages, expert's and attorney's fees, and exemplary damages.

South Texas Buick GMC timely responded, entered a general denial, and asserted affirmative defenses. South Texas Buick GMC argued that Esmeralda's claims were barred under the exclusive remedy provision of the Texas Workers' Compensation Act. *See* TEX. LAB. CODE ANN. § 408.001(a). South Texas Buick GMC alternatively maintained that Esmeralda's claims were barred by the PLPA. *See* TEX. CIV. PRAC. & REM. CODE ANN.

3

§ 148.003. South Texas Buick GMC argued that Esmeralda's pleading had fallen short of her "heavy burden" to prove that South Texas Buick GMC "'knowingly' failed to warn of or remediate conditions that it knew were likely to result in [Leonzo's] exposure to COVID-19, and that 'reliable scientific evidence' shows that [South Texas Buick GMC's] alleged conduct 'was the cause in fact' of [Leonzo's] COVID-19 infection."

Esmeralda thereafter served South Texas Buick GMC with an expert report, authored by Dr. Lawrence S. Mayer,[5] that concluded that:

12. The fact that the business remained open after it was ordered to close contributed greatly to the risk that [Leonzo] contracted COVID-19 and expired from the disease.

13. The fact that the business did not employ the risk mitigation strategies required by the county and the governor further contributed to the risk of illness and death.

Stated simply:

But for the exposure of the plaintiff to the SARS-CoV-2 [severe acute respiratory syndrome coronavirus 2] from working in a business that neither closed when ordered nor practiced required mitigation procedures it is unlikely [Leonzo] would have died from COVID-19 when he did and as he did.

South Texas Buick GMC filed an objection to the expert report and a motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 148.003(d), (f). The trial court held a hearing on South Texas Buick GMC's motion on February 28, 2023, determined that the report did not represent an objective, good faith effort to provide a factual and scientific basis for the assertion that South Texas Buick GMC's failure to act caused Leonzo to

---

[5] In his initial expert report, Dr. Lawrence S. Mayer, M.D., M.S., Ph.D., describes himself as an Emeritus Professor and Research Fellow in Human Flourishing at Harvard University and "one of only a few physicians who are formally trained in epidemiology, biostatistics, statistics, and public health."

contract COVID-19, and orally granted Esmeralda a thirty-day extension to allow her to cure the deficiencies.

On March 30, 2023, Esmeralda served an amended expert report spanning twenty-eight pages. In the amended expert report, Dr. Mayer opined, in relevant part:

> Based on the review of the medical and employment records, along with the death certificate of [Leonzo], it appears that he contracted COVID-19 while employed by [South Texas Buick GMC]. The medical records indicate that [Leonzo] was treated for COVID-19 symptoms at a hospital shortly before his death. The death certificate lists COVID-19 as a contributing cause of death. Furthermore, the medical records show that [Leonzo] had no underlying health conditions that would have made him more susceptible to severe illness or death from COVID-19. In addition, the temporal proximity between [Leonzo]'s hospitalization and his employment at [South Texas Buick GMC], combined with his job duties that required him to interact with multiple employees and customers on a daily basis, suggest that the workplace was a significant contributing factor to his contraction of the disease. This suggests that his exposure to the virus was likely due to the workplace environment. Overall, the medical records and death certificate provide strong evidence that [Leonzo] contracted COVID-19 while employed by [South Texas Buick GMC].

Dr. Mayer's amended expert report additionally indicated that he relied on several statements, and we summarize the statements as described by Dr. Mayer,[6] as well as his accompanying findings, below.

Esmeralda stated that Leonzo had "told her that several people at work had gotten sick with COVID-19," "[s]ome of them still went to work even if they were still sick, and he was given a small mask that barely fit." Leonzo's family "took precautions to protect themselves from COVID-19, such as wearing masks, taking vitamins, and practicing

---

[6] From recitations in other documents in the appellate record, it appears that the actual statements may have been attached to Dr. Mayer's amended expert report served on South Texas Buick GMC. However, the actual statements do not appear in the record before this Court. The only copy of the amended expert report in the appellate record appears at CR371-99, and it does not include any exhibits.

social distancing," and despite these efforts, several members of the household became sick after Leonzo showed symptoms. Dr. Mayer opined that Esmeralda's statements suggest that Leonzo had been taking precautions at home, but South Texas Buick GMC "did not take adequate measures to prevent the spread of the virus in the workplace," and thus was at fault.

Edric, Leonzo's son, reiterated that his father was "only given a small mask to protect himself at work" and "did not seem to have a good understanding of how to protect himself from COVID-19," that Leonzo had "coworkers who were still coming to work while sick," and all family members who lived with Leonzo became sick after Leonzo did. Based on these statements, Dr. Mayer opined that a small mask was "insufficient PPE" and suggested that South Texas Buick GMC did not have "proper social distancing measures" or "quarantine procedures" and did not provide "proper training or education to its employees on how to protect themselves from COVID-19."

Karina, Leonzo's daughter, stated that her father "was given small masks by his employer to protect himself from COVID-19," "several of his coworkers had become sick and some had to go to the hospital," and Leonzo "continued to go to work regardless of anyone being sick at work, and the only time he stayed home was when he was already feeling weak." Karina further stated that Leonzo "got sick from work," and "everyone at home got sick after he was hospitalized and tested positive for COVID-19." Dr. Mayer stated this suggests South Texas Buick GMC "did not provide adequate protection to their employees against COVID-19" and "did not have proper protocols in place to protect their employees and prevent the spread of COVID-19."

6

Osvaldo, Leonzo's son, stated that he "overheard conversations between his parents about some of the people at [Leonzo's] job getting sick and still working or having to go to the hospital and coming back to work even though they were still not fully healed." Osvaldo also stated Leonzo "was given masks at work, but he still contracted COVID-19," and Leonzo "was allowed to come home only when he was already sick." Dr. Mayer stated this suggests South Texas Buick GMC "may not have taken appropriate steps to ensure that sick employees did not return to work until they had fully recovered"; their "safety measures may have been inadequate or not properly enforced"; and South Texas Buick GMC "did not take adequate steps to prevent sick employees from spreading the virus to their families and the broader community."

Another son of Leonzo, Eric, stated that his father was "required to report to work regardless of the ongoing pandemic," and Eric "did not see any safety equipment or PPE being brought home by Leonzo from his workplace." However Eric also stated that he lived out of state at the time and had "no contact" with his father Leonzo. Eric believed that Leonzo "caught COVID-19 at work" and that other family members within Leonzo's household became sick "after Leonzo showed signs of infection." Dr. Mayer stated this suggests South Texas Buick GMC "may not have taken adequate measures to protect its employees from exposure to COVID-19 in the workplace, such as implementing or complying with governmental promulgated standards, guidance, or protocols."

Genaro Casarez, Leonzo's coworker, stated that he and Leonzo worked together as porters and were among eight porters working that summer. Genaro stated they wore masks as precautions and recalled Leonzo complaining of an ear infection. Although

Leonzo was "in pain for three weeks" and "they told him to go to the doctor," Leonzo refused to seek medical attention. Dr. Mayer stated this suggests "that there may have been a high level of contact and interaction between employees in that area, which could have increased the risk of exposure to the disease." Dr. Mayer further opined:

> [Leonzo] may have contracted COVID-19 in the workplace, and that the employer did not take adequate measures to prevent the spread of the virus. If [Leonzo] had been in pain for three weeks, it is possible that he was experiencing symptoms of COVID-19 during that time. If [Leonzo] had sought medical attention and been diagnosed with COVID-19, he could have taken steps to isolate himself and prevent the spread of the virus to others in the workplace. However, if [Leonzo] was not aware that he had contracted COVID-19, he may have continued to work and potentially exposed others to the virus. This reinforces the need for employers to take proactive measures to prevent the spread of COVID-19 in the workplace, including providing sick leave for employees who may be experiencing symptoms and enforcing safety protocols such as mask-wearing and social distancing. Proper education and training on reporting symptoms and following safety protocols are crucial during the pandemic. Employers should provide clear guidelines and instructions to their employees to ensure that everyone is aware of the necessary precautions and knows what to do if they suspect they have contracted the virus. This can include training on proper mask usage, social distancing, hand hygiene, and reporting any symptoms to management immediately. The fact that [Genaro] did not know how to report[7] [Leonzo's] symptoms to the employer suggests that there may have been a lack of clear communication and training on these protocols.

Martin Gonzalez, Leonzo's coworker, stated that South Texas Buick GMC had "provided masks to the employees and conducted COVID[-19] tests for those who wanted them," but Leonzo "did not comply with mask-wearing" and reportedly felt "suffocated when wearing a mask." Dr. Mayer stated Martin's statement suggested South Texas Buick GMC "did not appear to take any steps to ensure that [Leonzo] complied with mask-

---

[7] It does not appear in the report that Genaro stated he did not know how to report Leonzo's symptoms to his employer.

wearing protocols or to correct the problem he was complaining about and maybe to provide a different form of protection like a face shield or such."

Martin Moreno, Leonzo's coworker, stated that "everyone started taking precautions right away when COVID-19 began, such as wearing masks and using hand sanitizer." Moreno recalled Leonzo "complaining about one of his ears" for "about three weeks" and Leonzo worked throughout this period. Dr. Mayer stated, "The lack of proper procedures in place to ensure the immediate identification and isolation of employees showing symptoms of COVID-19 is clear from the fact that [Leonzo] continued working despite being sick for three weeks."

Dr Mayer also opined—based on what he characterized as incomplete or inadequate responses by South Texas Buick GMC to Esmeralda's Interrogatories Nos. 1, 9, and 17[8]—that it appeared that South Texas Buick GMC "did not have adequate policies and procedures in place for identifying and reporting COVID[-]19 illnesses"; "had a clear lack of knowledge or awareness of the CDC [Centers for Disease Control and Prevention] guidelines, Hidalgo County orders, and Governor's executive orders that were required to be followed in regard to COVID-19" and "OSHA [Occupational Safety and Health Administration] regulations regarding the reporting of COVID-19 illnesses"; and "failed to provide any type of training in their response."

---

[8] The responses to Esmeralda's interrogatories do not appear in the record on appeal. In South Texas Buick GMC's objection to the amended expert report, it notes that Dr. Mayer's amended expert report did not discuss the substance of the documents and asserts that the interrogatory responses referenced "documents that show the various policies and guidelines followed by the dealership including those from the CDC [Centers for Disease Control and Prevention]."

9

Dr. Mayer concluded that, having reviewed "state and local orders to shut down or limit the operation of business, CDC guidelines,[9] and OSHA regulations, issued at the time when [COVID-19] started and all the way to the point when [Leonzo] contracted the virus," "documentation or records related to the employer's compliance with these guidelines, such as training materials, written policies and procedures, or reports of workplace inspections or audits," and statements made by family members and coworkers, "the employer failed to implement and failed to comply with the government promulgated standards, guidance, or protocols intended to lower the likelihood of exposure to the disease."

Additionally, Dr. Mayer posited that South Texas Buick GMC "had control over the workplace environment," "knew that employees were more likely than not to come into contact with the virus," and "had a reasonable opportunity and ability to remediate the

---

[9] Dr. Mayer's amended expert report specifically referenced an CDC interim guidance issued on April 8, 2020, which "requir[ed] [e]mployers to sen[d] employees home who become sick," compile "information regarding those who had contact with the ill employee," and follow the following procedure in case of exposure:

    a.    check the employee's temperature and assess symptoms prior to entering the facility;

    b.    require the employee to self-monitor under the supervision of the employer's occupational health program;

    c.    require the employee to wear a mask at all times in the workplace for 14 days after the last exposure;

    d.    require the employee to maintain six feet of distance from others in the workplace; and

    e.    clean and disinfect all workspaces, common areas, and equipment.

While other documents in the record before this Court suggest that an exhibit of the CDC guidance was attached to the amended expert report served on South Texas Buick GMC, no such exhibit appears in the appellate record.

condition or warn the decedent of the condition before he came into contact with the virus," and despite this, "the employer knowingly failed to warn [Leonzo] of or remediate a condition that [e]mployer knew was likely to result in exposure to COVID-19." Dr. Mayer also stated that it was his expert opinion that South Texas Buick GMC "had a reasonable opportunity and ability to implement or comply with" "government promulgated standards, guidance, or protocols," but either refused to do so or "acted with flagrant disregard of the standards, guidance, or protocols." Finally, Dr. Mayer stated, "It is my expert opinion that reliable scientific evidence shows that the failure to warn the individual of the condition, remediate the condition, or implement or comply with the government promulgated standards, guidance, or protocols was the cause in fact of the individual contracting the disease."

Following receipt of the amended expert report, South Texas Buick GMC filed "Defendants' Objection to the Amended Report and Supplemental Reply in Support of their Objection to Report and Motion to Dismiss under the [PLPA]" on April 5, 2023. In the filing, South Texas Buick GMC argued that Dr. Mayer's amended expert report contained mass generalizations and ignored over 150 pages of "written and photographic evidence which contradict[ed] his speculative, unsupported conclusions." South Texas Buick GMC averred that the amended expert report additionally lacked a discussion of how South Texas Buick GMC "failed to implement or comply with the 'standards'" and did not "explain or reference any particular CDC or OSHA 'standard' that [South Texas Buick GMC] allegedly violated." South Texas Buick GMC also objected to Dr. Mayer's incorporation of unverified, written statements from the coworkers and several of Leonzo's family

11

members, along with an "unverified" exhibit that "appear[ed] to be a typed-up summary of various CDC guidelines with no sources." South Texas Buick GMC argued that the amended expert report did not "show that [South Texas Buick GMC's] failure to act caused [Leonzo] to contract [COVID-19]" and so did "not satisfy the requirements of [Texas Civil Practice and Remedies Code] subsection 148.003(b). South Texas Buick GMC sought the dismissal of Esmeralda's claims with prejudice and the award of its attorney's fees and costs of court. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 148.003(f).

The trial court held a hearing on South Texas Buick GMC's motion to dismiss on April 10, 2023, and took the matter under advisement. Following the hearing, Esmeralda filed a response on April 14, 2023, and, on May 17, 2023, the trial court granted South Texas Buick GMC's motion to dismiss with prejudice under Texas Civil Practice and Remedies Code § 148.003(f). The order dismissed Esmeralda's claims against South Texas Buick GMC with prejudice but did not award attorney's fees or costs of court.

Esmeralda subsequently requested findings of facts and conclusions of law. The trial court made thirty-two findings of facts and twenty-seven conclusions of law. In its conclusions of law, the trial court ruled that the amended expert report[10] had been "conclusory," "speculative," "based on unauthenticated and inadmissible hearsay without proper predicate,"[11] "contain[ed] misstatements of facts," "ignore[d] and contradict[ed] known facts," "fail[ed] to prove causation by reliable scientific evidence," and did not

---

[10] The findings of facts and conclusions of law referred to the original and amended expert report collectively as "reports." Because the amended expert report supersedes the original expert report, we refer only to the amended expert report.

[11] The trial court sustained South Texas Buick GMC's hearsay and authentication objections to the statements of individuals mentioned in Dr. Mayer's amended expert report.

12

present "an objective[,] good faith effort to provide a factual and scientific basis that [South Texas Buick GMC] or either of their acts or omissions caused injury or damage to or the death of [Leonzo] or caused" Esmeralda's damages.

This appeal followed.

## II.    DISCUSSION

Esmeralda raises one issue on appeal with fourteen subpoints. The various subpoints allege errors in the standard of review applied and in certain findings of facts and conclusions of law. [12] Ultimately, Esmeralda's challenge is to the trial court's determination to dismiss her claims with prejudice under Texas Civil Practice and Remedies Code § 148.003(f), and we so review it.

## A.    Standard of Review and Applicable Law

Enacted on June 14, 2021, § 148.003 of the PLPA provides civil liability protections to individuals and corporations[13] for claims that an individual suffered "injury or death caused by exposing [the] individual to a pandemic disease during a pandemic emergency." TEX. CIV. PRAC. & REM. CODE ANN. § 148.003(a). The PLPA "shields corporations from liability for 'exposing an individual to a pandemic disease during a pandemic emergency unless' claimants satisfy two requirements." *Johnson v. Tyson Foods, Inc.*, No. 22-10171, 2023 WL 2645553, at *2 (5th Cir. 2023) (per curiam) (not

---

[12] Subpoints 1, 2, 10, and 11 challenge the standard of review used by the trial court; subpoint 3 challenges certain findings of facts; and subpoints 4 through 9 and 12 through 14 challenge certain conclusions of law.

[13] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 1.002 (applying Code Construction Act to construction of provisions in Texas Civil Practices and Remedies Code); TEX. GOV'T CODE ANN. § 311.005(2) (defining "person" under Code Construction Act to include, inter alia, a corporation).

13

designated for publication); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 148.003(a). As summarized by *Johnson*:

> First, the statute requires claimants to demonstrate that the defendant "knowingly failed" to do one of two things: (1) warn of or remediate a condition that it knew was likely to result in exposure to the disease, or (2) "comply with government-promulgated standards, guidance, or protocols intended to lower the likelihood of exposure." Second, claimants must establish "reliable scientific evidence," which "shows the failure . . . was the cause in fact of the individual contracting the disease."

*Johnson*, 2023 WL 2645553, at *2 (internal citations omitted); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 148.003(a)(1)(A)–(B), (2).

Moreover, a claim to which the protections of § 148.003(a) apply is subject to being dismissed if the claimant fails to meet a preliminary expert report requirement. The PLPA requires that, not later than 120 days after the filing of an answer to a claim, the claimant must serve on the defendant: "(1) a report authored by at least one qualified expert that provides a factual and scientific basis for the assertion that the defendant's failure to act caused the individual to contract a pandemic disease; and (2) a curriculum vitae for each expert whose opinion is included in the report." TEX. CIV. PRAC. & REM. CODE ANN. § 148.003(b)(1)–(2).

If a claimant fails to timely serve "a sufficient report . . . the court, on the defendant's motion, shall enter an order: (1) dismissing the claim with respect to the defendant, with prejudice; and (2) awarding to the defendant reasonable attorney's fees and costs of court incurred by the defendant in the action." *Id.* § 148.003(f)(1)–(2).

If an expert report is timely served on the defendant, but the trial court determines that the report "does not represent an objective, good faith effort to provide a factual and

14

scientific basis for the assertion that the defendant's failure to act caused the injured individual to contract a pandemic disease," the trial court has the discretion to grant the claimant "on one occasion, a 30-day period to cure any deficiency in the report." *Id.* §148.003(e).

Only a handful of federal cases and one Texas intermediate appellate court have addressed the requirements of § 148.003 and only one has addressed the standard for reviewing the sufficiency of a served expert report. *See Eden II Enterprises, LLC v. Charlton*, No. 02-24-00079-CV, 2024 WL 2971692, at *3 (Tex. App.—Fort Worth June 13, 2024, no pet.) (mem. op.). Because there exists no binding precedent, we consider related precedent of analogous statutes, as well as federal cases for guidance. *See Shinogle v. Whitlock*, 596 S.W.3d 772, 776 (Tex. 2020) (per curiam) (analyzing Texas Civil Practice and Remedies Code § 128.053 by turning to similar expert report statutes, such as Texas Civil Practice and Remedies Code § 74.351, and finding instructive "precedent construing these analogous statutes"); *McNeel v. Citation Oil & Gas Corp.*, 526 S.W.3d 750, 756 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("[W]hen there is no binding precedent, Texas courts also look to federal law and federal cases for guidance in situations like today's case[.]").

One such analogous statute is Texas Civil Practice and Remedies Code § 74.351(b), which, like § 148.003, necessitates that certain suits must be supported by an expert report before litigation gets underway. *See Baylor Scott & White, Hillcrest Med. Ctr. v. Weems*, 575 S.W.3d 357, 362–63 (Tex. 2019); *Christus Spohn Health Sys. Corp. v. High*, 658 S.W.3d 375, 379 (Tex. App.—Corpus Christi–Edinburg 2022, pet. denied).

15

Under § 74.351 and § 148.003, a claimant's failure to serve an "objective, good faith" expert report results in the dismissal of the claimant's suit with prejudice. *Compare* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*), (r)(6), *with id.* § 148.003(f)(1). Accordingly, we apply the same standard of review here as we do when reviewing a trial court's ruling on a motion to dismiss challenging the adequacy of the expert report under § 74.351: abuse of discretion. *See Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018) (per curiam); *Pallares v. Magic Valley Elec. Co-op., Inc.*, 267 S.W.3d 67, 69–70 (Tex. App.—Corpus Christi–Edinburg 2008, pet. denied).

We likewise adopt the applicable Texas case law developed in the analysis of the adequacy of an expert report under § 74.351. In the context of § 74.351, the Texas Supreme Court has held "an expert report demonstrates a 'good faith effort' when it '(1) inform[s] the defendant of the specific conduct called into question and (2) provid[es] a basis for the trial court to conclude the claims have merit.'" *Abshire*, 563 S.W.3d at 223 (quoting *Baty v. Futrell*, 543 S.W.3d 689, 693–94 (Tex. 2018)). A report under § 74.351 also "need not marshal all the claimant's proof," but it is insufficient where the report "merely states the expert's conclusions about the [necessary elements]." *Id.* (quoting *Am. Transitional Care Ctrs. of Tex. v. Palacios*, 46 S.W.3d 873, 878–79 (Tex. 2001)).

Relevant here, the element of causation under the PLPA, *see* § 148.003(a)(2), (b)(1), "requires that the expert explain 'how and why' the alleged" failure to act by the defendant caused the individual to contract COVID-19. *Abshire*, 563 S.W.3d at 224. "[T]he report is sufficient if it makes 'a good-faith effort to explain, factually, how proximate

16

cause is going to be proven.'" *Id.* (quoting *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017)).

> Proximate cause has two components: (1) foreseeability and (2) cause-in-fact. For a negligent act or omission to have been a cause-in-fact of the harm, the act or omission must have been a substantial factor in bringing about the harm, and absent the act or omission—*i.e.*, but for the act or omission—the harm would not have occurred.
>
> This is the causal relationship between breach and injury that an expert report must explain to satisfy the Act.

*Zamarripa*, 526 S.W.3d at 460 (citation omitted). "[W]ithout factual explanations, the reports are nothing more than the *ipse dixit* of the experts, which . . . are clearly insufficient." *Id.* at 461.

"Cause" is not defined under § 148.003, *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 148.001–.003; thus, we adopt the Texas Supreme Court's "proximate cause" standard. *See Zamarripa*, 526 S.W.3d at 460; *see also Rodriguez v. Blaine Larsen Farms, Inc.*, No. 2:21-CV-52-Z, 2022 WL 18034478, at *2 (N.D. Tex. Apr. 21, 2022) ("The PLPA does not define 'caused by.' After reviewing relevant law, the Court determined 'caused by' requires proximate causation." (citation omitted)).

Because § 148.003(b)(1), like § 74.351, "focuses on what the report discusses," here too "the only information relevant to the inquiry is within the four corners" of the expert report. *Palacios*, 46 S.W.3d at 878 (discussing predecessor to § 74.351); *Valley Baptist Med. Ctr.-Brownsville v. Battles*, No. 13-14-00756-CV, 2015 WL 5579819, at *3 (Tex. App.—Corpus Christi–Edinburg June 25, 2015, no pet.) (mem. op) (applying

17

*Palacios's* "four corners" analysis to § 74.351). We therefore limit our review to the four corners of the amended expert report.

In our review of the trial court's decision for an abuse of discretion in the instant case, we also do not defer to either the findings of facts or conclusions of law issued by the court.[14] Chapter 148 does not require a trial court to issue findings of facts or conclusions of law for a dismissal under § 148.003(f). In this case, the trial court's findings of facts 1–20 recite historical facts related to the court proceedings below—which are not at issue in this appeal—and findings of facts twenty-one through thirty-two are in the nature of conclusions of law.[15] "Appellate courts review legal determinations de novo[.]" *Reliance Nat. Indem. v. Advance'd Temporaries, Inc.*, 227 S.W.3d 46, 50 (Tex. 2007). Therefore, we determine whether the trial court abused its discretion in dismissing Esmeralda's claim for failing to provide a sufficient report by reviewing the amended expert report, as it appears in the appellate record, and applicable law.

---

[14] We need not, and do not, decide in this appeal whether findings of facts and conclusions of law are appropriately issued in dismissals under § 148.003(f) or "properly considered" on appeal. *See* TEX. R. APP. P. 26.1(a)(4).

As this question is unsettled by the courts, we note that Esmerada's reliance on her request for findings of facts and conclusions of law to extend the appellate deadline was a reasonable, good faith (even if mistaken) justification for filing a notice of appeal in this case forty-one days (eleven days late) after the trial court's order dismissing her claims. *See Hone v. Hanafin*, 104 S.W.3d 884, 887–88 (Tex. 2003) (holding that when law unsettled about whether request for filing of facts and conclusions of law extended time period for filing notice of appeal, appellants could have "plausibly assumed" that request extended time period and were not required to admit that notice of appeal was untimely before appellate court could accept appellants' contention of timeliness as reasonable explanation for untimely filing); *see also Vergbert v. Dorner*, 959 S.W.2d 615, 616 (Tex. 1997) (implying motion for extension of time when appellant, acting in good faith, files notice of appeal within fifteen day-period in which it could move to extend the filing deadline under the rule of appellate procedure).

[15] Findings of fact 21-32 all begin with "Plaintiffs did not prove," all primarily mirror statutory language, and all include either a burden of proof or a mens rea. None of the "findings" reference the amended expert report.

**B.    Adequacy of Dr. Mayer's Amended Expert Report**

An expert's report does not "constitute a good-faith effort if it omits any of the statutory requirements." *Palacios*, 46 S.W.3d at 879. Accordingly, we consider first the causation requirement. While no Texas appellate court has yet addressed causation in the context of the PLPA, several federal cases have, and we turn to those for guidance.

In *Johnson v. Tyson Foods Inc.*, the Fifth Circuit Court of Appeals analyzed whether the plaintiff had pleaded sufficient allegations to state a claim under the PLPA that was "plausible on its face" so as to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Johnson*, 2023 WL 2645553, at *3. The appellate court determined that because "COVID-19 can and does spread at home, in schools, during sporting events, and everywhere else that people gather," the pleadings in a PLPA suit must include "facts which plausibly suggest that each plaintiff contracted COVID-19 *at the* [*defendant's*] *facility* as a result of [the defendant's] failures to warn, remediate, or implement government-promulgated protocols." *Id.* (quoting *NFIB v. OSHA*, 142 S. Ct. 661, 665 (2022) (per curiam)). The *Johnson* court ultimately concluded that dismissal under Rule 12b(6) was proper because the allegation that defendant "required COVID-positive individuals to continuing working such that they could infect others" at work, did "nothing to connect [this] conduct to *Plaintiffs*' contraction of the virus, much less suggest facts that could be supported by 'reliable scientific evidence,' establishing causation." *Id.* (emphasis in original). The Fifth Circuit noted that the plaintiffs did not, for example, allege that the defendant placed each plaintiff next to unmasked workers who demonstrated

symptoms such as sneezing or coughing or, more importantly, that they were near a person known by the defendant to have COVID-19. *Id.*

Federal district courts in Texas have similarly stated that establishing cause-in-fact requires facts alleging how and where COVID-19 was contracted—a laborious task. *See Requena v. Pilgrim's Pride Corp.*, 599 F. Supp. 3d 469, 482 (E.D. Tex. 2022) (concluding that, in a summary judgment context, an expert's report which stated "it was 'almost certain' that [the decedent] contracted COVID-19 at work" and criticized the defendant's virus-combatting methods generally "f[ell] short of establishing causation-in-fact" because it did not show that the decedent's exposure was the "direct result" of the defendant's allegedly deficient policies); *see also Chaney v. Tyson Foods, Inc.*, No. 6:22-CV-00190, 2023 WL 3260745, at *5 (E.D. Tex. Mar. 31, 2023) (not reported in Fed. Supp). (dismissing under Federal Rule of Civil Procedure 12b(6) and holding that "Plaintiff fails the causation prong because she provides no 'reliable scientific evidence' showing that [the defendant] was the cause-in-fact of her contracting COVID-19. Plaintiff makes only conclusory statements that she contracted COVID-19 because of unsafe working conditions; she fails to allege how, when, or why she contracted COVID-19 or account for other possible sources of infection.").

Although these federal cases did not involve dismissals under § 148.003(f)(1) for the failure to provide a sufficient expert report, we find their analysis of causation instructive. Similar to the Federal Rule of Civil Procedure 12b(6) standard that rejects conclusory statements regarding liability and requires pleadings demonstrating that a defendant's actions or omissions were the "cause-in-fact" of the plaintiff's injury, an

20

expert's report under § 148.003 that is merely conclusory is insufficient to meet the statute's requirements—rather, the expert report must explain 'how and why' the alleged" failure caused plaintiff to contract COVID-19. *Abshire*, 563 S.W.3d at 224. That is, an expert's report must provide a factual and scientific basis for the assertion that specific conduct by the defendant, constituting a knowing failure under § 148.003(a)(1), was the "cause-in-fact" of the plaintiff contracting a pandemic disease, and that, "but for" such specific failure by the defendant, the plaintiff would not have contracted the pandemic disease. TEX. CIV. PRAC. & REM. CODE ANN. § 148.003(a)(1), (2), (b)(1); *Abshire*, 563 S.W.3d at 223, 224; *Zamarripa*, 526 S.W.3d at 460.

Here, reviewing Dr. Mayer's amended expert report in its totality,[16] the report contains only speculations and assumptions as to how and where Leonzo contracted COVID-19, e.g.:

- it appears that he contracted COVID-19 while employed.

- the temporal proximity between [Leonzo's] hospitalization and his employment at [South Texas Buick GMC], combined with his job duties that required him to interact with multiple employees and customers on a daily basis, suggest that the workplace was a significant contributing factor to his contraction of the disease. This suggests that his exposure to the virus was likely due to the workplace environment.

---

[16] South Texas Buick GMC cites no authorities that hold that an expert who is preparing a report as required by § 148.003 may not review documents or statements that would be inadmissible as evidence at trial, and we find none. Analogously, we additionally note that the Texas Supreme Court has reiterated that an expert report pursuant to § 74.351 need not "meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 517 (Tex. 2017) (per curiam) (quoting *Scoresby v. Santillan*, 346 S.W.3d 546, 556 n.60 (Tex. 2011)); *Rice v. McLaren*, 554 S.W.3d 195, 206 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (concluding that the mere fact that an expert report "referenced a hearsay statement . . . does not in itself make the report inadequate"); *see also Hiner v. Gaspard*, No. 09-07-240CV, 2007 WL 2493471, at *7 (Tex. App.—Beaumont Sept. 6, 2007, pet. denied) (mem. op.) (same). Thus, we assume, without deciding that Dr. Mayer's inclusion of statements by Leonzo's coworkers and family members was permissible.

21

- This failure [to implement or comply with governmental promulgated standards, guidance, or protocols] may have contributed to [Leonzo] contracting COVID-19 at work.

- [Genaro] mentioned that Leonzo was in pain for three weeks. It further supports the argument that the deceased may have contracted COVID-19 in the workplace[.]

- Additionally, the coworker's testimony that Leonzo was not wearing a mask supports the conclusion that [South Texas Buick GMC] had not adequately communicated the importance of protective equipment or enforced compliance with such policies. Therefore, it is likely that [South Texas Buick GMC's] failure to act caused the employee to contract COVID-19.

Similarly, Dr. Mayer's sole reference to cause in fact:

It is my expert opinion that reliable scientific evidence shows that the failure to warn the individual of the condition, remediate the condition, or implement or comply with the government promulgated standards, guidance, or protocols was the cause[-]in[-]fact of the individual contracting the disease

is entirely conclusory, simply prefacing the statutory language of § 148.003(a)(2), with "It is my expert opinion that."

Dr. Mayer's amended expert report fails to provide a factual and scientific basis for the assertion that South Texas Buick GMC's failure to act in one of the ways set out in § 148.003(a)(1) actually *caused* Leonzo to contract a pandemic disease. TEX. CIV. PRAC. & REM. CODE ANN. § 148.003(a)(1), (2), (b)(1). The amended expert report states that it *appears* that Leonzo *may* have contracted COVID-19 at his place of employment and that South Texas Buick GMC's alleged failures *may have contributed* or *likely* caused Leonzo's illness. The amended expert report also fails to explain how any specific alleged failures by South Texas Buick GMC proximately caused Leonzo to contract COVID-19.

22

TEX. CIV. PRAC. & REM. CODE ANN. § 148.003(a)(1), (2), (b)(1); *Abshire*, 563 S.W.3d at 224; *Zamarripa*, 526 S.W.3d at 460.

We hold that the trial court did not abuse its discretion in determining that Dr. Mayer's amended expert report did not represent an objective, good faith effort to provide a factual and scientific basis for Dr. Mayer's assertion that South Texas Buick GMC's failure to act caused Leonzo to contract a pandemic disease. *See Abshire*, 563 S.W.3d at 223; TEX. CIV. PRAC. & REM. CODE ANN. § 148.003(b)(1). Thus, the amended expert report was not a "sufficient report" as required to avoid dismissal under § 148.003(f). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 148.003(f)(1). Additionally, because the trial court had already granted Esmeralda "on one occasion, a 30-day period to cure any deficiency in the report," *see id*. § 148.003(e)—which resulted in the service of Dr. Mayer's amended expert report—we hold that the trial court did not abuse its discretion in granting South Texas Buick GMC's subsequent motion to dismiss Esmeralda's claims with prejudice pursuant to § 148.003(f)(1).

### III. CONCLUSION

We overrule Esmeralda's sole issue and affirm the trial court's judgment.

CLARISSA SILVA
Justice

Delivered and filed on the
13th day of March, 2025.

23